No. 867.

## THE BOARD OF COMMISSIONERS OF SHELBY COUNTY v. CASTETTER.

JUDICIAL NOTICE.—*Geography and Topography of a Country.*—Courts take judicial notice of the topography and geography of the country.

PLEADING.— *Complaint.— Sufficiency of.— Bridge. — Duty to Repair.— Water-course.—Highway.*—In an action against a board of county commissioners for damages for personal injuries received at the approach of a bridge, for the alleged reason that the bridge was never properly constructed or kept in repair, the allegation in the complaint, that the bridge was "on the line and a part of a public highway," over Little Blue river, in Shelby county, Indiana, was sufficient to show that the bridge was constructed over a natural watercourse, on the line of a public highway, and within Shelby county, and the complaint shows such a state of facts, that it follows as a matter of law that the bridge was one which the board of commissioners was bound to keep in repair.

AMENDMENT OF PLEADING.— *When Discretionary with Court.—Abuse of Discretion.*—Where a cause was set for trial, the issues having been closed ten days before the day of trial, and on the day previous to the day set for trial the defendant asked permission to file a second paragraph of answer, which was refused, this court can not say that the discretion reposed in the trial court in regard thereto was abused.

JUDICIAL DISCRETION.— *Abuse of. —Refusal to Permit Jury to View Premises.—Reversal.*—The appellate tribunal will rarely reverse a cause for abuse of discretion in refusing to permit a jury to visit and view the premises where an accident happened.

INSTRUCTIONS TO JURY.—*Bridges.—Approach.—Failure to Keep in Safe Condition.—Care by Traveler.—Injury.*—Where an instruction was, in substance, that if you find that the approach to the bridge was not maintained by the defendant in a reasonably safe condition for travel, and that the plaintiff at the time of going upon the same, knew that it was not so maintained, she was not bound to forego travel upon the same, but in traveling thereon she was required to use care and prudence in proportion to the dangers, by reason of the failure to properly maintain the approach, known to her.

HUSBAND AND WIFE.—*Personal Injury of Wife.—Duty of Husband to Care for and Furnish Medical Treatment.—When Such Damages Accrue to the Wife, When to Husband.*—It is the duty of the husband to support and maintain his wife, and to furnish medical treatment and care in the case of injury or ailment; and presumptively all

such damages accrue to him, but this is a naked presumption, and when it is averred and proved that the wife has expended money or incurred a liability on her own account, she is entitled to recover therefor as if she were a *feme sole*, in case she is entitled to damages for the injury.

Opinion on petition for rehearing by LOTZ, J.

From the Johnson Circuit Court.

*O. J. Glessner* and *D. L. Wilson*, for appellant.
*K. M. Hord* and *E. K. Adams*, for appellee.

LOTZ, J.—This action was brought by the appellee, to recover damages for a personal injury sustained by her, caused by a fall from an embankment and approach of a bridge, the bridge being over Little Blue river, in Shelby county.

The substantial averments of the complaint are "that heretofore, before the happening of the grievances herein complained of, the defendant did erect over a running stream of water known as Little Blue river, in the said county of Shelby, a bridge, on the line and as a part of a public highway, at a point immediately east of the corporate line of the city of Shelbyville, in said county, and outside thereof; that on the 5th day of October, A. D. 1890, the plaintiff was traveling from a point east of said city, in a westerly direction, upon the line of said highway of which said bridge and its approaches were a part, to her residence in the city of Shelbyville, with a horse and buggy, driving a gentle horse, until she arrived at a point on the approach to said bridge, which was a part thereof, fifty feet east of the iron structure composing said bridge, at which point the said road bed of said approach was very narrow, to wit, twenty feet wide, and upon each side of said approach the banks were twenty-five feet high and very abrupt, being almost perpendicular; that at said point the horse attached to the buggy in which the plaintiff was riding became frightened and com-

menced to back and forced said buggy, with herself in the same, over the embankment on the north side of said approach, the said horse and buggy and the plaintiff all falling over the same into a ditch at the bottom of said embankment; that at said point there was no railing or obstruction that would in any way prevent said buggy from backing or falling over the said embankment; that from the date of the construction of said bridge, which was twenty years ago, the said defendant has maintained the said bridge as a part of said highway, but during all of said time has wholly failed and neglected to maintain any railing or barrier upon said approach to protect persons traveling on said approach and bridge from accident or injury by being precipitated over said embankment. Of the absence of said railing and barriers the defendant, during all of said time, had notice and had been fully advised.''

Continuing, the pleading specifically describes the plaintiff's injuries and the liabilities incurred on account of medical treatment and nursing, and closes with a general averment that she was without fault or negligence, and prayer for judgment.

A demurrer was overruled to this complaint, and this is one of the errors assigned in this court.

Appellant's counsel assail this pleading with great vigor, asserting that it does not affirmatively appear that the bridge and its approaches is one which the county was required to keep in repair.

The case of *Board, etc.,* v. *Deprez, Admr.,* 87 Ind. 509, is cited and confidently relied on to sustain their position. In that case the complaint alleged that the defendant, ''in the year of 1867, * * * built and constructed, and caused to be built and constructed across a stream of water known as Blue river, in said county, and near the northern terminus of Harrison street, in

the city of Shelbyville, and on or near what is commonly known and called the Michigan State road, a certain bridge across said stream."

This complaint was held to be fatally defective, for the reason, first, that it was not shown that the bridge was one which the county had authority to build; and, second, that the averments showed the bridge to be within the corporate limits of the city of Shelbyville.

The complaint in the case at bar differs from the one in the case cited in this essential respect, to wit, "the defendant did erect, over a running stream of water, * * * a bridge, on the line and as a part of a public highway," while in the case cited there is no allusion to a public highway.  The term "river" is used in each.  A river is a body of flowing water, a running stream of no specific dimensions, larger than a brook or rivulet and pent on either side by walls or banks.

Courts take judicial knowledge of the topography and geography of the country; so that "Blue river" and "Little Blue river" each have a specific and certain meaning in the pleadings.

The phrase "running stream of water," as used in the pleading, adds nothing to the idea of a river.  Every river is a running stream of water, but not every running stream of water is a river.  A running stream may be artificial, but a river is a body of water issuing *ex jure naturæ* from the earth.

The word watercourse is a broader and more comprehensive word than river.  In its most general sense, it means a course or channel in which water flows.  In its legal sense, it consists of bed, banks and water, a living stream confined in a channel, but not necessarily flowing all the time, for there are many watercourses which are sometimes dry.

It is a condition of the earth's surface, brought about

by the processes of nature. It is this fact, the natural condition, that gives rise to the rights of the public in natural watercourses. The law undertakes to regulate these rights, and the government, in order to discharge its full duty to the public, through designated instrumentalities, attempts to regulate and construct highways and bridges over and across them.

The word river, as used in each of the above pleadings, conveys the idea of a watercourse. Our statute, section 2885, R. S. 1881, gives the board of county commissioners the power to build and repair bridges over watercourses. It is very evident that the board has no power to build or repair any bridge unless it extends over a watercourse of some description.

Section 2892, R. S. 1881, makes it the duty of the board to cause all bridges in the county to be kept in repair, but this duty extends only to bridges over watercourses. This doctrine was announced in the recent, well-considered case of *Board, etc.*, v. *Bailey*, 122 Ind. 46.

In this latter case, however, there is an intimation that the duties of the county commissioners are not necessarily confined to structures over natural watercourses, but may extend and relate to erecting and keeping in repair bridges over permanent watercourses, either natural or artificial, and over lakes and ponds, and other bodies of water which may obstruct a highway.

It is true that within the purview of our statutes the term watercourse may have a more extended meaning than at common law, but, unless this clearly appears, the presumption is that it is used in its common law meaning. *Western Union Tel. Co.* v. *Scircle*, 103 Ind. 227.

But, for the purposes of this case, it is unnecessary to determine whether or not the common law meaning has been enlarged by our statute. At common law, the in-

habitants were bound to repair bridges erected over natural watercourses.   *Rex* v. *Oxfordshire*, 20 E. C. L. 289; *State* v. *Hudson Co.*, 30 N. J. L. 137.

The statutes of this State have clothed the board of commissioners of the county with the power to secure the means with which to build, erect, and keep in repair the bridges over natural watercourses on county highways at least, and after a bridge has once been erected it is made the duty of the board to keep such bridge in a reasonable state of repair for the ordinary travel thereon. For a failure so to do, it is liable to any person who, without fault, is injured in traveling thereon.   This has been the settled rule in this State ever since the decision in the case of *House* v. *Board*, *etc.*, 60 Ind. 580, and has been many times reaffirmed since.

A pleading should be specific and certain in its allegations; facts should be stated and not left to inference.

In the case of *Board* v. *Deprez, Admr.*, *supra*, there was no averment that the board was required to build or maintain the bridge, although it was over a natural watercourse.

There is no averment in the complaint in this case that the board was required to build or keep in repair the bridge, unless the allegation that it was "on the line and a part of a public highway" is equivalent thereto. This leads us to a consideration of the meaning of the term "public highway."

A highway is a public road which every citizen of the State has the right to use for the purpose of travel thereon. They are of many kinds, varying with the state of civilization and wealth of the country through which they are constructed and according to the extent of the traffic to be carried on upon them.   Angell on Highways, sections 2 and 3.

The term includes all kinds of public ways, county

and township roads, streets and alleys, turnpikes and plank roads, railroads, tramways, bridges, ferries, and navigable rivers.   Elliott Roads and Streets, 1.

In its broadest sense, it is a way in which the public have an interest as contradistinguished from a private way.   Bridges and highways are treated as distinct subjects of legislation in this State, but this policy does not apply to all bridges, nor to all highways.   The duty of building and keeping in repair bridges over watercourses, natural or artificial, on the line of a county or township highway only is laid upon the county commissioners, and the general duty of keeping highways and bridges in repair is laid upon township trustees and road supervisors.   *Board, etc.*, v. *Bailey, supra;* section 1549, Elliott's Supp.; *Abbett* v. *Board, etc.*, 114 Ind. 61; *Board, etc.*, v. *Rickel*, 106 Ind. 501.

Whilst our statutes recognize various kinds of highways, there are only certain kinds over which governmental instrumentalities have exclusive control.   Some of these are streets and alleys within municipal corporations, county and township roads, and free gravel roads. In all other highways, the rights of the public are subordinated to private interests.

An eminent law writer and jurist, in a recent work, says:   "Public roads are such as are open to the public and are under the control of governmental instrumentalities, as counties, townships, road districts and local subdivisions of a similar character.   Such roads are set apart to the public, and are maintained at the public expense.   Toll roads are, in a limited sense, public roads, and are highways for travel, but we do not regard them as public roads in a just sense, since there is in them a private proprietary right.   *   *   *   The private right which turnpike companies possess in their roads deprives these ways, in many essential particulars, of the

character of public roads. It seems to us that, strictly speaking, toll roads owned by a private· corporation, constructed and maintained for the purpose of private gain, are not public roads, although the people have a right to freely travel them upon the payment of the toll prescribed by law. They are, of course, public in a limited sense, but not in such a sense as are the public ways under ·full .control of the State, for public ways, in the strict sense, are completely under legislative control." Elliott's Roads and Streets, p. 5.

The same distinction may be made against railroads and all other highways in which private interests predominate over public interests.

Section 240, R. S. 1881, which lays down the rules for the construction of statutes, provides that "the word 'highway' shall include county bridges, State and county roads, unless otherwise expressly provided."

It seems to have been the policy and purpose of the Legislation of this State regulating the location and control of highways (when considered as a whole), to make a distinction between such as are free from private interests and those that are not. A public highway, within the purview of our legislation, is one in which there is no interest but the public interest to be subserved, an entire absence of any private interest or proprietary right.

We think that, by every fair intendment, the complaint in this case shows that the bridge was constructed over a natural watercourse on the line of a public highway, and within Shelby county.

The law having imposed the duty upon the county commissioners to keep· the bridges on public highways and over natural watercourses in repair, we think that when a complaint shows such state of facts that it follows, as a matter of law, that the bridge in question was one which the board was bound to keep in repair.

There is no direct allegation of negligence on the part of the defendant, but as no point is made against the complaint in this respect, we deem it unnecessary to consider it in this respect.

We think the demurrer was correctly overruled.

Another assignment of error discussed by counsel is that the court erred in refusing to permit the defendant to file a second paragraph of answer.

This answer was one in bar, and not in abatement. It alleged that the plaintiff did not, before the bringing of the action in the circuit court, file or present her claim for allowance to the Board of Commissioners of Shelby County.

The record shows that the issues had been completed, and the cause set for trial, ten days before the 8th day of May, 1891; that, on the 7th day of May, the appellant asked that the issues be opened, and it be permitted to file the answer in question. The venue of the cause had been changed from Shelby county to Johnson county. The propriety of opening the issues at that time and permitting a new one to be formed that might require evidence on the part of the plaintiff from Shelby county, was a matter largely in the discretion of the trial court. We can not say that this discretion was abused.

Another error of which complaint is made is that of the court in refusing to permit the jury to visit and view the premises where the accident happened. The statute reposes the privilege of allowing the jury to view and inspect the premises, almost exclusively in the discretion of the trial court. It would be an exceptional case, indeed, where this court would reverse a cause for an abuse of this discretion.

We have examined the evidence and the showing made by appellant in support of their motion, and are con-

vinced that the action of the court in this respect was proper.

It is also insisted that the trial court erred in overruling the motion for a new trial.

It is insisted that several of the instructions given by the court to the jury did not correctly state the law, and were misleading and prejudicial to the rights of appellant. The instructions are, none of them, properly in the record. Under such circumstances, we are not required to consider them.

There was abundant evidence to support the verdict, and we think the motion for a new trial was properly overruled.

Judgment affirmed.

Filed April 13, 1893.

## On Petition for a Rehearing.

Lotz, J.—In the former opinion, affirming the judgment of the lower court, it was said that "the instructions are, none of them, properly in the record. Under such circumstances, we are not required to consider them."

Having reached the conclusion that the judgment should be affirmed, we refrained from stating the reasons why the instructions were not properly in the record.

Counsel for appellant have filed an earnest petition for a rehearing, in which they show that they had no opportunity to examine appellee's brief or the record in the cause after said brief was filed and before the decision was rendered; that they had no knowledge of and were not responsible for certain alleged changes in the record; that the strictures contained in appellee's brief are very unjust and unfair, and place them in an unfavorable attitude before this court. They ask that a rehearing be granted, and they be permitted to explain their relation

to such alleged changes, and to show that the instructions are properly in the record.

We have examined the affidavits upon file, and are convinced that appellant's counsel are free from fault in relation to such alleged changes.

We have concluded, under the facts shown by the affidavits on file, to treat the instructions as being properly in the record, and to give the appellant the full benefit thereof.

Only two of the instructions are assailed in the argument, and, under the familiar rule, if any objections exist as to the others, such objections are waived.

The first instruction of which complaint is made is in these words: "If you find that the approach to and of the bridge, and of which complaint is made, was not, at the time of the alleged occurrence, maintained by the defendant in a reasonably safe condition for public travel, and if you further find that the plaintiff, at the time of going upon the same, if she did go upon the same at the time complained of, knew that the same was not so maintained, if it was not so maintained, she was not bound to forego travel upon such approach, but, in traveling upon the same, she was required, by the law, to use care and prudence in proportion to such dangers, if any, as she may have known to exist from the failure, if any, to so maintain such approach."

Appellant's counsel contend that under the rule embodied in this instruction no one is bound to forego traveling upon a public highway at any time, no matter how imminent the dangers of which he has knowledge. That even though the danger be certain death or destruction to property, the traveler need not refrain from traveling over the point of danger.

This assumption is an extreme one, and has no similarity to the facts of this case. An instruction should be

construed with reference to the evidence in hand.   Here the evidence showed that the appellee was traveling upon an approach to a bridge; that the horse became frightened and she was thrown over the embankment and injured; that there was no railing or guard at the side to prevent falling from the approach.

It seems to be the settled law of this State that one is not required to refrain from traveling on a public highway merely because he knows it to be dangerous.   The law only requires of him that he be careful in proportion to the danger of which he has knowledge, and he may proceed, if it be consistent with reasonable prudence, to travel thereon.   And whether he used reasonable care with his knowledge of the danger, is generally a question for the jury.   *Jonesboro, etc., Turnpike Co.* v. *Baldwin*, 57 Ind. 86; *Henry County Turnpike Co.* v. *Jackson*, 86 Ind. 111.

As applicable to the evidence in this case, we think this instruction was not erroneous.

The court, in instructing the jury with reference to the elements of damage which might be taken into consideration, used this language:   "You may also estimate any sum which you may find she has paid from her own separate means for medical treatment, and what liability she may have incurred for any such treatment upon her sole and separate account, not, however, exceeding the sum of fifty dollars."

The complaint is silent as to whether the appellee was married or sole.   It was an admitted fact on the trial that she was a married woman at the time the injury was received, and continued to be up to the time of the trial.

The averment of the complaint as to the special damages for medical attendance is in the following words: "That she has expended and incurred a liability, on account of medical attendance, nursing, and care, in the sum of fifty dollars."

It is the duty of the husband to support and maintain his wife, and to furnish medical treatment and care in the case of injury or ailment; and, presumptively, all such damages accrue to him, but this is but a naked presumption, and when it is averred and proved that the wife has expended money or incurred a liability on her own account, she is entitled to recover therefor as if she were sole.

Under the present statutes of this State, the only limitation upon the powers of a married woman to make contracts is that she can not become surety, or alienate or incumber her real estate without her husband joining with her. In all other respects, she stands upon an equal footing with her husband.

If she expended money or incurred liability as alleged in the complaint, she may recover therefor.

The special circumstances showing her right of recovery are sufficiently averred.

We think there was no error in giving this instruction.

Having considered the other questions discussed in the former opinion, we find no substantial reason for granting a rehearing.

The petition is therefore everruled.

Filed June 22, 1893.