No. 991.

## THE BOARD OF COMMISSIONERS OF SHELBY COUNTY v. BLAIR, ADMINISTRATOR.

PLEADING.—*Necessary Allegations.*— *Conclusion.*— *Personal Injury.*— *Damages.*—*Bridge.*— *County.*—In an action against a county for injuries sustained while crossing a bridge, the allegation "that the bridge complained of was constructed at a point where the defendant had a right to, and it was its duty to, construct it," is a mere conclusion, and does not take the place of the necessary allegations of fact showing that the county had authority to build it.

SAME.—*Sufficient Allegation.*—*Bridge.*—*Personal Injury.*—*County.*—In such case, an allegation "that the bridge complained of was situate and located over and across a mill-race, through which a large quantity of water flowed rapidly," is sufficient to show that the bridge spanned a watercourse.

COUNTY.—*Bridges.*—*Duty to Keep in Repair.*—A county is only bound to repair such bridges as it is authorized to build; and it is not necessary that the county should have built the bridge in order to give rise to the duty to keep in repair, for a bridge may become a county bridge by adoption, no matter by whom it is built, and such duty extends to approaches and railings.

BRIDGE.— *When a County Bridge.*—*Highway.*—*Mill-Race.*—Where the excavation of a mill-race across a highway necessitates the construction of a bridge across the race in order to restore the highway to a passable condition, a bridge so constructed, it matters not by whom, becomes a part of the highway.

ASSIGNMENT OF ERRORS.—*When Will not Lie.*—*Presumption.*—Where the record does not show when instructions, which have been refused, were tendered to the court, error can not be predicated upon such action, for every presumption will be indulged in favor of the action of the trial court.

EVIDENCE.—*Repairs of a Bridge Subsequent to Accident.*—*Admissible for What Purpose.*—In an action for injuries received at a bridge alleged to be defective, and received by reason of such defect, evidence that since the happening of the injuries complained of, there has been a new bridge put in across the watercourse, in the place of the old one, is admissible to prove that the bridge was a part of the highway, but not for the purpose of proving that the defendant had been negligent.

From the Decatur Circuit Court.

*O. J. Glessner, D. L. Wilson, B. K. Elliott* and *W. F. Elliott,* for appellant.

*T. B. Adams* and *I. Carter,* for appellee.

Ross, J.—The appellee, Alonzo Blair, as administrator of the estate of Laura Beynon, deceased, instituted this action against the appellant, in the Shelby Circuit Court, to recover damages for the death of said Laura Beynon, alleged to have been caused by the negligence of the appellant in improperly constructing and in failing to keep in repair a bridge across a mill race in Shelby county. The venue of the cause was changed to the Decatur Circuit Court.

The complaint is in two paragraphs, to each of which a demurrer was filed by appellant and overruled by the court. The correctness of these rulings are the first questions presented on this appeal.

The first paragraph, omitting the caption, is as follows:

"In the above entitled cause, the plaintiff complains of the defendant and says, that on, to wit, the 27th day of May, 1891, he was appointed, by the Shelby Circuit Court, administrator of the estate of Laura Beynon, deceased; that he qualified, gave bond, entered upon the discharge of his duties as such administrator, and is now the legally qualified and acting administrator of said estate; that said Laura Beynon died intestate in said county on, to wit, the 23d day of March, 1891, leaving surviving her three children, whose names and ages are, respectively, Lewis Beynon, aged 11 years; Maggie Beynon, aged 8 years, and Alvin Beynon, aged 1 year; and also her husband, William Beynon, and that said children and husband are her next of kin and sole heirs at law; that said decedent was, at her death, 30 years old. And the plaintiff further says, that the defendant negligently

and improperly constructed and caused to be constructed a county bridge on, in, and across the public county highway in said county, leading from the city of Shelbyville, in said county, to Boggstown, in the same county, and that said bridge was not within the corporate limits of of any town or city; that said bridge was negligently and improperly constructed in that, to wit, said bridge was not constructed of sufficient width to make it safe for persons to pass over it in vehicles drawn by horses in case said horses should shy or become frightened from any cause; that said bridge was constructed without any side rails or protections at the sides thereof to prevent horses from running off said bridge at the sides of the same, or to prevent their backing off or running off said bridge the vehicles to which they were attached, while passing on and over said bridge; that the boards in the floor of said bridge were loose and movable, and made much noise and motion when either ridden or driven over, and were not of sufficient thickness to make a good and sufficient roadway; that the boards in said floor were so laid as to make cracks and holes through which horses, when crossing said bridge, could see running water beneath; that the defendant permitted said bridge to remain as so constructed, up to and including the time hereinafter named, at which it is alleged said Laura Beynon was injured, with this exception, that the defendant suffered and permitted said bridge and the floor thereof to rot and fall in decay, and the cracks and holes on the floor of the same to become greatly enlarged and so remain for a long time, to wit, five years before the time at which said Laura Beynon was so injured; that said bridge was of the length of, to wit, thirty feet; of the height of, to wit, fifteen feet from the ground below, and of the width of only ten feet, and was situated and located over and across a mill race, through which

a large quantity of water flowed rapidly, making much noise; that the defendant has accepted and maintained said bridge so constructed, and had used it as a county bridge in, across, and forming a part of said highway over which the public did travel for more than fifteen years immediately preceding the time when said decedent was injured; that there is now, and has been, for twenty years last past, much travel over said highway, and, at the time said decedent was so injured, there was no way by which persons lawfully traveling on said highway could cross said mill race, except by going on and over said bridge; that at said time there was a county bridge constructed and maintained by the defendant across Brandywine creek, at a point a little southeast of the bridge across said race, and at a distance of, to wit, seventy-five feet from it, and said bridge across said Brandywine creek was and is a part of said public highway leading from Shelbyville, Indiana, to Boggstown, Indiana; that both of said bridges were constructed at points where the defendant had a right to, and it was its duty to, construct them; that the floor of said bridge, at the time of said injury, was ten feet above the floor of the bridge across said race; that the said highway extending from the bridge across said race to said Brandywine bridge, ran over an approach to said bridge, which approach was also the approach to said race bridge, was constructed by the defendant, was steep and sharply curved, so that in passing over said highway from said Brandywine bridge, to said race bridge, there was a tendency, by reason of the steep grade and sharp curve, for vehicles to which horses were attached to run on the horses, and to run them and the vehicle off said race bridge, at the left hand side, all of which would have been avoided had such approach and said bridge been properly constructed

and maintained; that such approach was constructed by the defendant, was a part of said public county highway, and had been such for more than five years immediately preceding the time of said injury; that on the 27th day of ———, 1888, said bridge and approach were in the condition herein described, and the defendant then knew and had known, for all of five years immediately preceding, that they were in such condition; that on said day decedent was in a wagon with, to wit, twenty children from the age of five to ten years, and was being carefully driven over said public highway and down said grade from said Brandywine bridge on her way home, and, while being there driven, the horses attached to said wagon became frightened by the wagon running on them in going down said grade, and at the movement and noise of the boards in the floor of the bridge across said race, and at the sight and sound of the water underneath said bridge, and at other things unknown to the plaintiff, and ran off the said bridge at the left hand side, and ran the wagon off said bridge at said side, and without any fault or negligence of said decedent, or of any of her next of kin, or of any one who was in said wagon with her, she was thrown out of said wagon and from said bridge into the water below, and on to some large, rough timbers with sharp corners which the defendant had placed and permitted to be placed and remain at the side of said bridge, and was seriously and fatally injured in her abdomen, back, spine, and lower parts of her body, both internally and externally, from which injuries she languished and suffered until the 23d day of March, 1891, when she died; that her death was due to the injuries she received on said 27th day of July; that she did not know it was dangerous for her so to travel over said highway on said day; that the defendant invited her to travel over said highway on said day,

The Board of Commissioners of Shelby Co. *v.* Blair, Administrator.

and that there was no other way by which she could pass to her said home; that said highway leading from said city of Shelbyville to said town of Boggstown was and had been a public highway for more than fifty years before said 27th day of July, and that on said day the public generally were using and traveling over said highway and down said approach and on and across said race bridge; that the death of said decedent was caused by the negligence and wrong of the defendant as herein set out, and not by the negligence or fault or wrong of any one else; that by said negligence and wrong the said children have lost their mother and a mother's support, care, and love, and said husband has lost the service, companionship, and support of a faithful and loving wife, who, at the time of her death, was thirty years old, and prior to her injuries had been strong, healthy, and free from disease and pain, and they have thereby been damaged in a great sum of $10,000.

"Wherefore the plaintiff asks judgment for $10,000, costs, and all other proper relief."

The second paragraph is, in substance, the same as the first, except that instead of alleging that the county constructed the bridge, it is alleged that the county accepted and adopted the bridge, and for more than fifteen years past had continued "to accept and maintain said bridge" as a part of a public highway.

Inasmuch as counties are involuntary corporations, being mere local subdivisions of the State, and created by the sovereign power of the State, they are not liable for the negligence of their servants or agents unless made so by statute. *Union Civil Township* v. *Berryman,* 3 Ind. App. 344; *Board, etc.,* v. *Boswell,* 4 Ind. App. 133; *Vigo Township* v. *Board, etc.,* 111 Ind. 170; *Abbett* v. *Board, etc.,* 114 Ind. 61; *Board, etc.,* v. *Chipp's Admr.,* 131 Ind. 56; *Smith* v. *Board, etc.,* 131 Ind. 116; *Morris*

v. *Board, etc.*, 131 Ind. 285; *Board, etc.*, v. *Daily*, 132 Ind. 73.

And, in the absence of an express statute imposing a duty to keep its bridges in repair, a county is not liable for failure to do so. Elliott on Roads and Streets, p. 42; *Board, etc.*, v. *Chipp's Admr., supra.*

But the Legislature may charge them with the duty of maintaining highways and bridges within their boundaries, thereby creating a liability for neglect in the performance of the duty thus enjoined, if injury results. When once a duty is imposed, its breach resulting in an injury fixes the liability.

It is well settled that a county is not liable for injuries received by a traveler on a highway by reason of the imperfect or improper construction of a bridge, or by reason of its having become out of repair, except such bridge is one which it had authority to build, or one which it was the duty of the county to maintain. Hence, in an action against a county to recover for injuries received on account of a defective bridge, the facts alleged in the complaint, in order to be sufficient to withstand a demurrer, must show a duty resting upon the county and a breach of such duty. *Board, etc.*, v. *Brod*, 3 Ind. App. 585; *Board, etc.*, v. *Deprez, Admr.*, 87 Ind. 509; *Spicer* v. *Board, etc.*, 126 Ind. 369.

It is alleged, in the complaint, that the bridge complained of was constructed at a point "where the defendant had a right to and it was its duty to construct it." This is a mere conclusion, and does not take the place of the necessary allegations of fact showing that the county had authority to build it. *Board, etc.*, v. *Brod, supra.*

Section 2892, R. S. 1881, provides that the board of county commissioners shall cause all bridges in the county to be kept in repair, while sections 2880 and 2885

authorize such board to erect bridges over streams and watercourses. And it has been held that these statutes impose upon counties the duty of keeping all bridges over streams and watercourses, upon highways, in repair, and for a neglect of such duty, resulting in injury, a liability exists. *Park* v. *Board, etc.*, 3 Ind. App. 536; *House* v. *Board, etc.*, 60 Ind. 580; *Pritchett* v. *Board, etc.*, 62 Ind. 210; *Patton* v. *Board, etc.*, 96 Ind. 131; *Vaught* v. *Board, etc.*, 101 Ind. 123.

And, in some cases, the construction placed upon section 2892, *supra,* is that the county must use reasonable care to keep in repair all bridges upon the public highways of the county, regardless of the size of the bridge or the character of the streams or ditches which they span. *Board, etc.*, v. *Sisson*, 2 Ind. App. 311; *House* v. *Board, etc., supra; Board, etc.*, v. *Pritchett*, 85 Ind. 68; *Board, etc.*, v. *Brown*, 89 Ind. 48; *Board, etc.*, v. *Bacon*, 96 Ind. 31; *Vaught* v. *Board, etc., supra; Board, etc.*, v. *Legg, Admr.*, 110 Ind. 479; *Board, etc.*, v. *Arnett*, 116 Ind. 438.

In the case of *Board, etc.*, v. *Legg, Admr.*, 93 Ind. 523, ELLIOTT, J., speaking for the court, says: "It is charged in the third paragraph of the complaint before us, that the appellant had for more than ten years prior to the time appellee's intestate was injured, maintained the bridge; that the bridge formed a part of a public highway in the county of Howard; and that it was the duty of the defendants to keep the bridges on the public highway in the county of Howard in repair. We think that these allegations show that the bridge was one over which the county had control, and which it was bound to maintain."

And, when the same case was before the Supreme Court a second time, 110 Ind. 479, the court, in discussing the correctness of the instructions given on the trial

of the cause, says: "The substance of the instructions thus objected to was, that a traveler, using a public highway of the county in the ordinary manner, and without any knowledge of defects in a bridge forming a part thereof, has a right to presume that it is in a safe condition, and to drive over and across the same with his team, in the usual manner. * * * It is contended on behalf of appellant, that the bridge, by the breaking down of which Davis was killed, was a small one, over an artificial ditch, dug for the purpose of draining wet lands; that, being such, it was not a bridge over a 'watercourse,' and such as the county was bound to keep in repair.

"The county board has general supervision over the bridges of the county, and must exercise reasonable care in keeping all bridges upon the public highways of the county in a safe condition, regardless of the size of the bridge or the character of the streams or ditches which they may span."

Again, in the case of *Board, etc.*, v. *State, ex rel.*, 113 Ind. 179, the court says: "When a bridge is a part of a public county highway, the county, or, what in law is the same thing in this State, the board of commissioners, is bound to exercise reasonable care in the maintenance of it, so that injury may not result to persons traveling upon the highway. * * * The board of commissioners owes a duty to the public to keep the bridges forming a part of the public highways of the county in a safe condition, so as to prevent injury to persons traveling upon such highways."

And in the case of *Board, etc.*, v. *Washington Township*, 121 Ind. 379, which was an action brought by the county to compel the township to pay part of the expense of maintaining a bridge which was a part of a free gravel road, the court says: "The common-law rule is that the

county officers are bound to adopt and maintain a public bridge forming a part of a road, or else have it declared a nuisance. Under this rule the bridge in question must be regarded as a county bridge, which it is the duty of the county to maintain."

In the case of *Board, etc.,* v. *Bailey,* 122 Ind. 46, it is said: "The Legislature having restricted the authority of county commissioners to the erection and repair of bridges over streams or watercourses, thereby clearly indicated a purpose to employ the term 'bridge' according to its common-law acceptation, or in its technical sense. In that sense it denotes a structure erected over a river, creek, pond, lake, or stream of water flowing in a channel, between banks more or less defined, although such channel may be occasionally dry, in order to facilitate public passage over the same."

And again, in the same case, the court says: "We do not mean to say that the power and duty of county commissioners in respect to the erection and repair of bridges is necessarily confined to structures over natural watercourses and flowing streams, but their duties relate to the erecting and keeping in repair of the bridges over permanent watercourses, either natural or artificial, or over lakes, ponds, or other more or less permanent and continuous bodies of water which obstruct the convenient use of a highway for public travel."

Prior to the passage of the free gravel road laws, counties were not responsible for defective highways, and no action could be maintained against a county for negligence respecting highways. *Board, etc.,* v. *Rickel,* 106 Ind. 501, and cases cited.

Not only is there confusion and uncertainty in the adjudicated cases as to just what kind of a bridge is to be understood as a county bridge, but some confusion apparently exists in our statutes concerning the respect-

ive duties of counties and townships relative to the building and maintaining of bridges, the same general authority to build and the duty of keeping in repair bridges, having been conferred and imposed both upon the county commissioners and the township officers, and yet it has been held that section 2892, *supra*, which imposes upon the county the duty of keeping all bridges therein in repair, in so far as the traveling public is concerned, has not been changed or the duty lessened by any of the subsequent acts imposing the same duty upon township and road officers. *Board, etc.,* v. *Sisson, supra; Board, etc.,* v. *Emmerson,* 95 Ind. 579; *Patton* v. *Board, etc., supra; Vaught* v. *Board, etc.; supra; Board, etc.,* v. *Arnett, supra; Board, etc.,* v. *Washington Township, supra.*

It is alleged in both paragraphs of the complaint under consideration, that the bridge complained of is a part of a public highway in said county. Is that allegation sufficient to show that the bridge was one which it was the duty of the county to keep in repair?

We think that when the courts have said that under section 2892, *supra*, the board of commissioners is bound to keep in repair all the bridges which form a part of the public highways of the county, a broader construction was placed upon it than the Legislature intended. All of the sections of the statute, those conferring upon the board the authority to build bridges, as well as the one imposing upon it the duty of keeping them in repair, should be considered and construed together. In that view of the intention of the Legislature, and so construing the several statutes, we are forced to the conclusion that the county is only bound to repair such bridges as it is authorized to build. It is not necessary that the county should have built the bridge in order that it be its duty to keep it in repair, for a bridge may become a

The Board of Commissioners of Shelby Co. *v.* Blair, Administrator.

county bridge by adoption, no matter by whom it is built. *State, ex rel.*, v. *Board, etc.*, 80 Ind. 478.

And the duty thus resting upon county boards of keeping county bridges in repair, extends to the necessary approaches, and also to railings, when the same are needed to make a bridge reasonably safe for travel by those who exercise ordinary care in traveling over them. *Board, etc.*, v. *Sisson, supra.*

It is also alleged in each paragraph of the complaint, that the bridge complained of "was situated and located over and across a mill race, through which a large quantity of water flowed rapidly."

This allegation is sufficient to show that the bridge spanned a watercourse, for a mill race through which a large quantity of water flows, is an artificial watercourse. And the other allegations, showing the bridge to be a part of the public highway, show that it was clearly a county bridge within the meaning of the statute, and that it was the duty of the board of commissioners to keep it in repair.

The court did not err in overruling the demurrer to each paragraph of the complaint.

The fourth error assigned is that the court erred in overruling appellant's motion for judgment on the answers of the jury to interrogatories. In answer to interrogatories submitted to them, the jury found that the bridge complained of was built in 1864, by one Samuel Murphy, in and as a part of an existing public highway, spanning a mill race at that time constructed by him across said highway for his own use; that there was no necessity for a bridge at that point, before the digging of the mill race, but that the digging of the mill race occasioned the necessity for a bridge at that point; that neither appellant nor the officers of the township in

which the bridge is located ever repaired it, but that appellant assumed and exercised control over it.

Counsel for appellant say: "Under such a state of facts the appellant was not and could not become liable for failure to keep the bridge in repair. The jury found, that the highway was in existence long before the race was dug; that the race was dug by Samuel Murphy, the mill owner, and the bridge built by him across the race for his own benefit; that the cutting of the mill race by him created a necessity for the bridge; that the county neither constructed nor authorized the construction of said bridge, and that it never assumed to keep it in repair."

To sustain this contention counsel cite the case of *Dygert* v. *Schenck*, 23 Wend. 445, where the court, in passing upon the question of the right of an individual to dig a ditch across a public highway and his duty to build and maintain a bridge across the same, says: "The very necessity for its erection arises out of a nuisance, which was the work of the defendant himself."

While the principle there announced is probably applicable to that case, it is not authority in the case under consideration. As heretofore stated, the law is settled in this State that the board of commissioners is to keep in repair all the bridges in the county over watercourses, either natural or artificial, which are necessarily parts of the public highways. If the excavation of the race necessitated the construction of a bridge in order to restore the highway and a bridge was constructed, it became a part of the highway and it matters not who may have built it. If it is such a bridge as the county must keep in repair, a failure on the part of the county in the performance of such duty, to the injury of a traveler without fault on his part, makes it liable therefor.

We do not pretend to hold that a county can be held

liable for failing to keep in repair every bridge which it may have assumed charge and control of, simply because it attempted to assume the responsibility of keeping the same in repair. It is not within the power of a county, through its officers, to create such a liability, for the liability exists from a breach of a duty which can be imposed only by a positive statute.

. Following the many cases already cited, if the bridge complained of was a necessary part of the highway, whether it crossed a river, lake, pond, ditch, or mill race, it was the duty of the county to keep it in repair.

The appellant was not entitled to judgment on the answers to interrogatories.

What we have said in passing upon the sufficiency of the complaint and the right of appellant to a judgment on the answers to the interrogatories, disposes of most of the objections made to instructions given, and also as to those requested by the appellant which the court refused to give.

The objections to the second instruction given by the court are not well taken. It is true that if the court, in its instructions, attempts to designate what facts are necessary to be established to entitle a party to recover, all of the necessary facts must be stated. For, if the court directs the jury that a party is entitled to recover upon proof of a state of facts less than what the law applicable to the issues require, it is error. We do not consider that the court, by this instruction, attempted to limit the material facts essential to a right to recover to the fact that it was only necessary for the appellee to prove either that the appellant constructed the bridge, or that subsequent to its erection appellant accepted and adopted it as a county bridge and as a part of a highway. Other instructions given by the court clearly indicated to the jury that it was necessary to prove more.

Appellant requested the court to give a number of instructions, which were refused by the court, and this ruling of the court is urged on this appeal for a reversal of the judgment.

Section 533, R. S. 1881, provides:   "When the evidence is concluded, and either party desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered and signed by the party or his attorney asking the same, and delivered to the court."

And it is well settled that such instructions must be presented to the court before the argument begins. *Terry* v. *Shively*, 93 Ind. 413; *Evansville, etc., R. R. Co.* v. *Crist*, 116 Ind. 446.

Every reasonable and natural presumption will be indulged by this court in favor of the correctness of the rulings of the trial court.   *Graves* v. *Duckwall*, 103 Ind. 560.

Hence, a party who alleges error in the rulings of the trial court, in order to justify this court in reversing the judgment, must present a record which shows affirmatively that an error was committed.   The record in this case does not show when the instructions asked were tendered to the court, and if we indulge the presumption that the court rightfully refused them, unless the record shows affirmatively that they were refused wrongfully, we may assume they were refused because not tendered at the proper time.   Considering together all the instructions given by the court, we think they were correct and sufficient under the issues in this case.

On the trial of the cause, George Francis, a witness called on behalf of the appellee, was asked the following question, viz:   "Now tell the jury whether or not, since Mrs. Beynon was hurt, there has been a new bridge put in across the race."   To this question the appellant ob-

jected, the objection was overruled, exception saved, and the witness permitted to testify.    This ruling of the court appellant insists was error.

Evidence of repairs made after the happening of an accident is not competent to show antecedent negligence. *Terre Haute, etc., R. R. Co.* v. *Clem,* 123 Ind. 15, and cases cited; *Board, etc.,* v. *Pearson,* 129 Ind. 456.

The evidence complained of, while incompetent for the purpose of showing the appellant to have been negligent, or that the bridge was out of repair at the time appellee was injured, was nevertheless competent for the purpose of showing that the appellant had accepted and adopted it as a part of the public highway.    It was a controverted question in the case, and one which it was necessary for the appellee to prove, that the bridge was a part of the highway, and that the appellant had accepted and adopted it as such.

Evidence that they exercised control over it by looking after and repairing it was competent for the purpose of showing that it had adopted it and considered it a part of the highway.    If it had been conceded that the bridge was a part of the highway, and was kept in repair by the appellant, we think it would have been improper to have admitted the evidence complained of, for it is clear, under such issues, that its admission was for the purpose of proving negligence on the part of the appellant in keeping the bridge in repair.    If evidence offered is competent for the purpose of establishing any fact pertinent to and within the issues, it is not error to admit it.

Several other minor questions have been mentioned in appellant's brief, but we can not see that they were prejudicial to appellant's rights, and for that reason we do not extend this opinion and enumerate and pass upon them separately.

It is unnecessary to examine the cross-errors assigned.

We find no error in the record, for which the judgment should be reversed.

Judgment affirmed.

GAVIN, J., took no part in the decision of this case.

