The Board of Commissioners of Parke County *v.* Wagner, Admr.

No. 16,763.

BOARD OF COMMISSIONERS OF PARKE COUNTY *v.* WAGNER,
ADMINISTRATOR.

| | |
|---|---|
| 138 | 609 |
| 139 | 616 |
| 138 | 609 |
| 141 | 66 |
| 138 | 609 |
| 149 | 352 |
| 138 | 609 |
| 168 | 211 |
| 138 | 609 |
| 171 | 611 |

NEGLIGENCE.—*County.—Defective Bridge.*—The rule that counties are liable for injuries caused by defects in bridges which they are bound to keep safe, but negligently fail to do so, is the law of this State, although there is no statute creating such liability.

BRIDGE.—*Complaint.—Motion to Make More Specific.*—Where a complaint alleges an injury while crossing "a bridge over a natural watercourse," and alleges that the bridge was one which it was the duty of the county to maintain, and that it constituted part of a public highway, a motion to make the pleading more specific, by setting out more particularly the character, size and description of the watercourse, and the character, size and position of the bridge over the same, may be properly overruled.

SAME.—*Duty of County to Maintain Bridges.—Personal Injury.*—Under section 2892, R. S. 1881, the board of county commissioners is charged with the duty of causing all bridges in the county to be kept in repair, whether they cross natural or artificial watercourses, and for a breach of this duty, resulting in injury to a traveler, without contributory fault, the county is liable.

SAME.—*Character of Bridge.*—No matter by whom, when or for what purpose built, or whether temporary or permanent, as soon as it becomes the duty of the board of commissioners to maintain the bridge, that duty permits no other consideration than the reasonable safety of the persons crossing it in a proper manner.

WATERCOURSE.—*Definition.*—A watercourse, in its most general sense, is a course or channel in which water flows. In its legal sense, it consists of bed, banks and water, a living stream, that is, a permanent or continuous stream, confined in a channel, but not necessarily flowing all the time, as the question does not depend upon the length of time water flows as compared with the time the channel is dry.

SAME.—*Instructions Defining Watercourse.*—For instructions defining a watercourse held to have been properly given, and for instructions held to have been properly refused, see opinion.

VERDICT.—*General.— When Prevails Against Answers to Interrogatories.*—A general verdict will prevail against answers to interrogatories, unless the latter, being themselves free from conflict, are in absolute conflict with the verdict.

VOL. 138—39

BILL OF EXCEPTIONS.—*Omission of Some Evidence.*—*Questions Arising Upon Evidence.*—*Practice.*—Where the bill of exceptions affirmatively shows that evidence was introduced which is omitted from the transcript, the statement of the bill that it contains "all the evidence given in the cause," will not prevail, and no question arising upon the evidence will be considered.

From the Vermillion Circuit Court.

*D. H. Maxwell, H. Maxwell, M. G. Rhoads* and *B. S. Aikman,* for appellant.

*C. McNutt, J. G. McNutt, J. Jump, J. E. Lamb, J. C. Davis, H. H. Conley* and *J. C. Sawyer,* for appellee.

HACKNEY, C. J.—In the circuit court the appellee recovered a judgment against the appellant for forty-five hundred dollars. The complaint alleged that the appellee's decedent, William Wagner, while attempting to cross "a bridge over a natural water course," in Parke county, was thrown from his buggy and received injuries from which he died; that he was so thrown from his buggy, by reason of the negligence of the appellant in permitting said bridge to become and remain in a dangerous condition, the boards of the floor thereof being loose and worn, and when the decedent's horse went upon the bridge one of said boards "gave way and tipped up, striking said horse, which was of ordinary gentleness, thereby hurting and greatly frightening it so that it became frantic and beyond control," and ran away, causing the injuries as aforesaid. It was further alleged that said bridge constituted a part of a public highway of said county leading from Numa to Clinton Locks.

The appellant assigns as error the action of the trial court in overruling a demurrer to the complaint, and in discussion, while conceding that the rule is otherwise in this State, urges that there is no liability by counties for such negligence, owing to the absence of any statute creating such liability. While agreeing with counsel in

their statement of the rule, we are unable to recede from the position of this State upon the question, since that position has been so often assumed that it has become a part of "the law of the land," and if hereafter departed from, it must be by legislative direction. *Cones* v. *Board, etc.*, 137 Ind. 404; *Board, etc.*, v. *Daily*, 132 Ind. 73; *Board, etc.*, v. *Chipps, Admr.*, 131 Ind. 56; *Morris* v. *Board, etc.*, 131 Ind. 285; *Smith* v. *Board, etc.*, 131 Ind. 116; *Board, etc.*, v. *Rickel*, 106 Ind. 501.

It is next insisted that the appellant's motion to make the complaint more specific was erroneously overruled. The motion was "That the plaintiff be required to set out more particularly the character, size and description of the natural watercourse mentioned in said complaint, and the character, size and position of the bridge over the same."

The argument in support of the motion is that notice should have been given by the complaint as to the particular watercourse and bridge in question to enable the defense to prepare to meet the true issue. If the motion had sought the location of the highway where it crossed the watercourse spanned by the bridge, the desired notice might have been obtained, since the location thereof, as "leading from Numa to Clinton Locks," in said county, was not very definite. But the character, size and description of the watercourse and bridge were both difficult and unnecessary to allege, and most certainly so when the bridge was alleged to be one which it was the duty of the county to maintain. If the real object of the motion was to enable the appellant to have tested the sufficiency of the complaint upon the special questions of the character of the watercourse and of the bridge, the motion sought evidence and not statements of fact.

There was no error in the ruling complained of.

The appellant further complains of the action of the

lower court in overruling its motion for judgment upon the answers of the jury to special interrogatories, notwithstanding the general verdict for the appellee. The interrogatories and answers were as follows:

"1. Does water flow under the alleged bridge the greater portion of the time? Ans. No; but it does in the channel above and near the bridge in controversy.

"2. Is the channel under the alleged bridge in controversy without water flowing through it the greater part of the time? Ans. No; the channel over which the said bridge is situated is not without water running through it the greater portion of the time.

"3. Was the alleged bridge in controversy in this cause out of repair at the time of the accident to William Wagner, deceased? Ans. Yes.

"4. Had the alleged bridge in controversy been repaired by the proper township authority a few days before the time of the injury received by William Wagner? Ans. Only partially, two planks being replaced by others."

The principal argument in support of the motion rests upon the theory that there could be no recovery if the bridge did not span a channel in which, at the crossing of such bridge, there was a flow of water the greater portion of the time. In other words, if the water did not flow in the channel at that point the greater part of the time, such channel would not be that of a *watercourse*, as defined by the law, and the county would not be required to keep the bridge over it in repair.

Without considering the correctness of the position assumed, we recall the thoroughly established rules of practice that the general verdict must prevail unless the answers to interrogatories stand in absolute conflict with it, and that such conflict is not raised by answers within

themselves conflicting. *Heltonville Mfg. Co.* v. *Fields*, 138 Ind. 58, and cases there cited.

If the appellant's theory were correct, the first answer would raise such necessary conflict with the general verdict, but in the same respect the second answer would confirm the general verdict. The two answers are in emphatic conflict, and the general verdict was properly permitted to stand.

The fourth assigned error is in the overruling of the appellant's motion for a new trial. The first ground of the motion for a new trial was that the verdict was contrary to the evidence, and upon this ground the appellant urges four propositions, viz., was it shown:

1st. That the bridge was such as the county was required to keep in repair?

2d. Was it over a watercourse?

3d. Was it out of repair?

4th. Was the accident due to the ill repair of the bridge?

The fifth, seventh, eighth, ninth and tenth grounds of the motion related to the admission of evidence. The appellee objects to a consideration of the propositions so involved for the reason, as urged, that all of the evidence is not properly in the record. The transcript discloses the introduction in evidence, of six photographs and a map of the situation surrounding the place of the accident. The map, it affirmatively appears, was employed in the examination of witnesses, and without it many questions and answers, in the record, are unintelligible. The photographs and the map were not in the transcript when it was filed in this court, but one year after such filing, and when the appellee had insisted that they were not in the record, they were sent, by counsel, to the clerk with a letter explaining their omission as unavoidable, and suggesting that, inasmuch as

the bill of exceptions contained the usual concluding statement, "this was all the evidence given in the cause," no inquiry could be made of such omitted evidence. No suggestion of the appellant's views of this question is made in the briefs, and we adopt the suggestion of the latter as the only possible defense of the record. But in view of the frequent decisions of this court, this defense is insufficient. It has often been held that where the bill of exceptions affirmatively shows the introduction of evidence, which evidence is omitted from the transcript, the statement of the bill that it contains "all of the evidence given in the cause" will not prevail. Elliott's App. Pro., section 824. *Saxon* v. *State*, 116 Ind. 6; *Harris* v. *Tomlinson*, 130 Ind. 426, and cases there cited. It must, therefore, be held that the evidence is ·not in the record, and that no question arising upon it can be considered.

The appellant assails a number of the instructions given at the request of the appellee, as failing to properly define a natural watercourse. The theory of the appellant is, that there can be no recovery for an injury sustained from a defective bridge unless such bridge crosses a natural watercourse, and connects a public highway. The cases in this State are in confusion upon this question, many apparently holding that the liability arises from the fact that the bridge forms a part of the highway, and not depending upon the size of the bridge or the character of the stream or body of water crossed by it. *Board, etc.*, v. *Arnett*, 116 Ind. 438; *Board, etc.*, v. *State, ex rel.*, 113 Ind. 179; *Board, etc.*, v. *Montgomery*, 109 Ind. 69; *Vaught* v. *Board, etc.*, 101 Ind. 123; *Board, etc.*, v. *Bacon*, 96 Ind. 31; *Board, etc.*,v. *Emmerson*, 95 Ind. 579; *Board, etc.*, v. *Legg, Admr.*, 93 Ind. 523; *Board, etc.*, v. *Brown*, 89 Ind. 48; *Board, etc.*, v. *Pritchett*, 85 Ind. 68; *House* v. *Board, etc.*, 60 Ind. 580;, *Har-*

*ris* v. *Board, etc.*, 121 Ind. 299; *Board, etc.*, v. *Washington Township*, 121 Ind. 379; and probably other cases. In the *Board, etc.*, v. *Legg, Admr.*, 110 Ind. 479, and *Board, etc.*, v. *Mutchler*, 137 Ind. 140, it was expressly held that the size of the bridge, and the character of the stream or ditch crossed were unimportant if the bridge was a part of a public highway, and liability was extended to bridges crossing ditches for the drainage of wet lands.

In *Board, etc.*, v. *Bailey*, 122 Ind. 46; *Board, etc.*, v. *Brod.* 3 Ind. App. 585; *Board, etc.*, v. *Castetter*, 7 Ind. App. 309; *Board, etc.*, v. *Blair*, 8 Ind. App. 574, it was held that section 2892, R. S. 1881 (section 3282, R. S. 1894), should be construed in connection with other provisions of the statute requiring counties to build and repair bridges, and when so construed the authority of the counties was to build bridges only over watercourses, and the duty of counties was only to repair such bridges as they were authorized to build.

The latest decision by this court is that of *Board, etc.*, v. *Mutchler, supra,* and if we found it necessary to reconcile the conflict suggested, and to adhere to the holding in that case, it would be unnecessary to decide whether the definitions of a watercourse given by the trial court in this case were correct, since they could in no way have harmed the appellant, but would have required more from the appellee than necessary to establish his cause of action. Our conclusion does not require that we should reconcile the cases cited. The statute, section 2885, R. S. 1881 (R. S. 1894, section 3275), authorizes the building or repair of bridges over watercourses, while section 2892, R. S. 1881 (section 3282, R. S. 1894), charges the boards of commissioners with the duty of causing all bridges in their counties to be kept in repair.

If, as suggested by some of the cases cited, these provisions should be construed together, and as authorizing the repair only of bridges over watercourses, we should conclude that natural watercourses alone were not intended, but that artificial courses were also included.

Several of our cases contain definitions of a *watercourse,* notably *Schlichter* v. *Phillipy,* 67 Ind. 201; *Weis* v. *City of Madison,* 75 Ind. 241; *Hebron, etc., Co.* v. *Harvey,* 90 Ind. 192; *Rice* v. *City of Evansville,* 108 Ind. 7; *Board, etc.,* v. *Bailey, supra; Board,. etc.,* v. *Brod, supra,* and *Board, etc.,* v. *Castetter, supra.*

There are verbal differences in all of the definitions of the books, but that given in *Board, etc.,* v. *Castetter, supra,* is accurate.    It is there said that "in its most general sense, it means a course or channel in which water flows.    In its legal sense, it consists of bed, banks and water, a living stream confined in a channel, but not necessarily flowing all the time."    The word *living* is here employed in the sense of *permanent* or *continuous,* as used in *Board, etc.,* v. *Bailey, supra,* and *Rice* v. *City of Evansville, supra.*

The instructions given were as follows:

"4.    Although mere ravines, through which only surface water occasionally flows, are not natural streams or watercourses, within the meaning of the law, yet to constitute a natural stream or watercourse there need only be a natural bed and banks and evidence of a permanent stream of running water, though it may often contain no water, and may sometimes be dry.

"5.    To constitute a natural stream or watercourse, within the meaning of the law, it is not necessary that it should at all times contain running or moving water, nor indeed is it necessary that at any time there should be any certain amount or volume of water in or passing

through or along its banks and bed; in other words, the size of the stream is immaterial.

"6. The Supreme Court of this State, in stating what is, in law, a natural watercourse has used and adopted the following definition of the true doctrine upon the subject: 'Where the face of the country is such as necessarily collects in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow, as to require an outlet to some common reservoir, and if such water is discharged through a well defined channel which the force of the water has made for itself and through which it flows and has flowed from time immemorial, such channel is a natural watercourse,' and, I instruct you, that if added to the water just mentioned such channel was assisted in being cut by the water from natural springs, which continue to run as a moving body of water in it, for large portions of each year after the water from the rains and melting snows has passed away, that fact of itself, though said channel might after, in dry times, have no water in it, might constitute, in law, a natural watercourse.

"7. A natural watercourse usually empties or debouches into some other stream or body of water, but this is not necessarily so, as the waters of the natural stream may sink into a cavity or be absorbed or taken down by rapid percolation into a bed of sand, gravel or soil.

"8. The fact that at a certain point or certain points in a natural watercourse the water in it in dry times sinks or percolates away into a natural bed of sand or gravel, and at such point or points leaves the bed of the channel dry does not of itself destroy the character of such part or parts of such channel as a natural watercourse."

"13. In this case, in order to show that the structure

in question was one over a natural stream or watercourse, it is sufficient if the plaintiff has shown to your satisfaction that the stream was one which had a natural channel with a bed and banks and evidences of carrying a permanent body of moving water, and it can make no difference that it was dry when the accident complained of took place.''

These instructions the appellant considers separately, complaining that some are inadequate statements of the law, that others are misleading, and still others not applicable to the evidence. Of the last of these objections, we have seen that no consideration may be had since the evidence is not in the record. Considering all of the instructions together, as we must, they seem fairly to state the rule as we understand it and as it is deducible from the cases we have cited.

The appellant's contention is that a channel must have some other source of water supply than from mere surface drainage to constitute a watercourse within the meaning of the law. With this position the instructions do not disagree, as we understand them. It is also urged that by many definitions of a watercourse it is required that there shall be ''ordinarily and most frequently a moving body of water,'' and from such definitions it is argued that if the water is. not flowing in the channel for a greater portion of the year it is not a watercourse.

We do not understand that the authorities make the question depend upon the computation of the time which the water flows as compared with the time the channel is dry.

The channel should have a supply of living water, though it is not necessary that the supply should be sufficient at all times, or most of the time, to flow the entire length of the channel.

The appellant urges, also, that the court erred in refusing certain instructions asked.

The first instruction so asked was drawn upon the theory that there could be no liability unless the bridge in question crossed a *watercourse*. The same proposition was given to the jury in the appellant's fourth instruction, while, as stated in that so refused, it was incorrect in predicating that conclusion upon section 2885, R. S. 1881, instead of that section and section 2892, *supra*.

Appellant's instruction numbered six stated that ravines and hollows serving only for surface drainage, were not watercourses, and that they do not become watercourses unless the water ordinarily and most frequently flows through them. It will be seen that two propositions are included in the instruction, the first of which was embodied in charge numbered four, given by the court and copied above, while the second, as we think, is not the law.

The third instruction refused defined a watercourse as a channel with water flowing from its source to its mouth continuously. We have already suggested the objection to this proposition.

Instruction numbered five was as follows: "The bed of a watercourse is a natural object. The banks on either side of the bed are fast land, on which vegetation grows, unless the banks are too steep, and the bed is composed of loose or shifting soil or sand or gravel or rocks and having in it no vegetation, or only such as grows when commonly covered with water."

We think the instruction misleading, and properly refused. The bank of a watercourse is not necessarily fast land on which vegetation grows, unless the bank is too steep. Common observation teaches that banks of some watercourses are shifting sand and gravel producing little or no vegetation, and that others are solid limestone,

producing no vegetation, and while the beds of some are composed of loose or shifting soil or sand or gravel, others are sandstone or limestone, perfectly solid and free from shifting soil, sand, or gravel. If the evidence disclosed—and we can not say that it did not—that the course in question had a solid limestone bed, it would have been the duty of the jury, under the definition asked, to have found that it was not a watercourse.

Instruction numbered nine, refused by the court, sought to charge the jury, as the duty of the commissioners in the matter of repairs upon the bridge, and, in doing so, stated that one element to be considered, in determining whether the bridge was out of repair, was all the surroundings and the use for which the bridge was intended when it was built, and the purpose for which it was maintained after it was built. If built by the trustee of the township, by a supervisor, or by a citizen, it matters not what the use or intention in the building, whether temporary or permanent, and when, if ever, it became the duty of the commissioners to maintain it, that duty permitted no other consideration than the reasonable safety of those crossing the bridge in a proper manner. So, if it was constructed by a former board.

Other instructions refused and modified are pressed by counsel, but they depend upon the evidence or embody some question already passed upon.

We find no error presented by the record, and the judgment of the circuit court is affirmed.

Filed Sept. 25, 1894.