Filed Jan. 31, 1890.

———————

No. 13,757.

## THE BOARD OF COMMISSIONERS OF CARROLL COUNTY *v.* BAILEY.

BRIDGE.—*Keeping in Repair.—County Commissioners.—Culvert.—Statute.*— A structure, or culvert, over a ravine, made by filling in the depression with earth and gravel, there being in the center under the highway an archway of stone masonry covered by a parapet, which was erected for the purpose merely of draining surface water off the public highway is not a bridge within the meaning of the statute, which requires the board of commissioners of each county to cause all the bridges therein to be kept in repair.

SAME.—*Term "Bridge" Defined.—Common Law.*—The term "bridge," in its common-law meaning, the sense employed by the statute, denotes a structure erected over a river, creek, pond, lake, or stream of water flowing in a channel, between banks more or less defined, although such channel may be occasionally dry, in order to facilitate public passage over the same.

From the Cass Circuit Court.

*J. Applegate* and *C. R. Pollard,* for appellant.

*B. Crane* and *A. B. Anderson,* for appellee.

MITCHELL, C. J—This was an action by Bailey against the board of commissioners of Carroll county to recover damages for injuries alleged to have been sustained by him in

falling from a bridge, which it is charged had negligently been suffered to become and remain out of repair, and in a dangerous condition. The controlling question is, whether or not the structure, or place from which the plaintiff fell, was a bridge within the meaning of the statute, which requires the board of commissioners of each county to cause all the bridges therein to be kept in repair. The facts relating to the character of the structure are undisputed. The witnesses uniformly speak of it as a culvert. It appears that a public highway leading into the village of Camden passes over a ravine, or depression, some ten feet or more in depth, and about seventy-five feet in width, the sides of which incline gradually from the center. Years ago this was filled with earth and gravel, so as to make the surface of the highway level, and in the center an archway was constructed under the highway of stone masonry. This was formed by building two parallel walls five feet apart, twenty feet long, and eight feet high, arched over at the top with stone, and covered with earth. The work was done by the township, the owner of the adjacent land contributing from fifty to seventy-five dollars because the archway afforded a convenient passage-way under the highway for his cattle. There were retaining, or wing walls, extending from the archway some distance on either side, and there was a parapet about eighteen inches high on top of the archway. The parapet had fallen into dilapidation at the time the injury occurred. No water flowed through the ravine, or archway, except immediately after hard rains, when surface water, conducted through a sewer-pipe, terminating in an adjacent field five or six rods from the highway, flowed through the archway. The question in dispute is, whether the structure above described constitutes a bridge within the meaning of the statute. The contention, on behalf of the county, is that the Legislature intended to impose upon the boards of commissioners of the several counties the duty of constructing and repairing only such bridges as the inhabitants of a county, at com-

mon law, were bound to erect and repair. The word "bridge," in its ordinary acceptation, denotes a structure of wood, iron, brick, or stone, ordinarily erected over a river, creek, pond, or lake ; or over a ravine, railroad, canal, or other obstruction in a highway, so as to make a continuous roadway, and afford to travellers a convenient passage-way from one bank to the other. *Board, etc.*, v. *Brown*, 89 Ind. 48 ; *Enfield, etc., Co.* v. *Hartford, etc., R. R. Co.*, 17 Conn. 40 (42 Am. Dec. 716) ; Anderson's Law Dic.; 2 Am. & Eng. Encyc. of Law, 540.

By the common law the inhabitants of a county were only bound to repair bridges erected over watercourses. Such structures as were *super flumen vel cursum aquœ. Rex* v. *Oxfordshire*, 20 E. C. L. 289 ; *State* v. *Gorham*, 30 Me. 451 ; *Whitall* v. *Board, etc.*, 40 N. J. L. 302 ; *State* v. *Hudson County*, 30 N. J. L. 137.

As was said in *Western Union, etc., Co.* v. *Scircle*, 103 Ind. 227 : " Where the statute employs common-law terms having a known meaning, it is presumed, unless the contrary affirmatively appears, that the terms were used in their common-law meaning." The statute relating to the power of counties over bridges does not, however, leave the kind of structures which a county has the power to build or repair to inference or conjecture. Section 2880, R. S. 1881, authorizes county commissioners, whenever public convenience requires " the erection or repair of any bridge across any stream forming the boundary line between two counties," to take steps to erect or repair such bridge.

In respect to bridges within the county, section 2885, R. S. 1881, provides that " Whenever in the opinion of the county commissioners the public convenience shall require that a bridge should be repaired or built over any *watercourse* they shall cause survey and estimate therefor to be made, and direct the same to be erected."

Section 2892, R. S. 1881, imposes upon the board of commissioners of each county the duty of causing all bridges

therein to be kept in repair, and provides for displaying a notice at each end of certain bridges, and prescribes a fine for riding or driving over any such bridge faster than a walk.

The Legislature having restricted the authority of county commissioners to the erection and repair of bridges over streams, or watercourses, thereby clearly indicated a purpose to employ the term " bridge," according to its common-law acceptation, or in its technical sense. In that sense it denotes a structure erected over a river, creek, pond, lake, or stream of water flowing in a channel, between banks more or less defined, although such channel may be occasionally dry, in order to facilitate public passage over the same. *Rex* v. *Oxfordshire, supra.*

" Ravines through which surface water occasionally flows, are not natural watercourses, within the meaning of the law. ' To constitute a natural watercourse, there must be a bed and banks and evidences of a permanent stream of running water.' " *Rice* v. *City of Evansville*, 108 Ind. 7. *Weis* v. *City of Madison*, 75 Ind. 241 ; *Hoyt* v. *City of Hudson*, 27 Wis. 656.

We do not mean to say that the power and duty of county commissioners in respect to the erection and repair of bridges is necessarily confined to structures over natural watercourses and flowing streams, but their duties relate to the erecting and keeping in repair of bridges over permanent watercourses, either natural or artificial, or over lakes, ponds, or other more or less permanent and continuous bodies of water which obstruct the convenient use of a highway for public travel. *Board, etc.,* v. *Legg,* 110 Ind. 479 (484), and cases cited.

Contrary to the policy which prevails in some of the States, bridges and highways in this State are treated as distinct subjects of legislation. The duty of erecting and repairing bridges over watercourses is imposed upon the board of commissioners, while the general duty of keeping high-

ways and bridges in repair is laid upon township trustees and road supervisors. Section 1549, Elliott's Supp.; *Abbett* v. *Board, etc.,* 114 Ind. 61 ; *Board, etc.,* v. *Rickel,* 106 Ind. 501.

This feature of the law distinguishes the present case from *Whitall* v. *Board, etc., supra,* in which it was held that because the duty of maintaining highways and bridges was confided to the same public officers, the latter had the power to expend public money in the erection of a bridge, although the structure did not span a watercourse. The power of boards of commissioners in this State is limited to the construction and maintenance of bridges over watercourses.

Such structures as are erected, or contrived, merely for the purpose of draining the roadway, or to prevent surface water from standing in the road where a highway is carried over a ravine, or other depression in the earth, or for the purpose of carrying one highway over another, unless it be a waterway, are not bridges within the meaning of the statute. *Taylor* v. *Davis County,* 40 Iowa, 295.

In *State, ex rel.,* v. *Board, etc.,* 71 Wis. 321, it was held that a bridge might be erected across a dry ravine by the board of county commissioners, the court assigning as a reason therefor, that "The act of 1885 does not limit the bridges which the county may be required to assist in building, to such as cross streams of water." As we have already seen, our statute confines the power and duty of county commissioners, in respect to erecting and repairing bridges, to such as span streams and watercourses, and the case cited is, therefore, not an authority in the present case.

It can not be supposed that the Legislature, after limiting the power of the commissioners to the erection and repair of bridges over watercourses, intended to impose upon those officers the duty of causing all structures which might fall under the general designation of bridges to be kept in repair. The whole act relating to the subject of bridges must

be construed together. *Board, etc.,* v. *Thompson,* 106 Ind. 534.

As before remarked, the witnesses uniformly spoke of the structure in question as a culvert, which is defined by Worcester as " an arched passage or drain for water beneath a road, canal, or railway." This definition accurately describes the structure which we are asked to hold constituted a bridge within the meaning of the statute. . While every arched passage-way for water is not necessarily a culvert, we are satisfied that such a passage-way, designed merely for the purpose of draining surface water off the road, is not a bridge within the contemplation of the statute.

The court erred in overruling the motion for a new trial.

Judgment reversed, with costs.

Filed Jan. 31, 1890.