# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1895, IN THE EIGHTIETH
YEAR OF THE STATE.

---

No. 17,386.

BOARD OF COMMISSIONERS OF JASPER COUNTY *v.*
ALLMAN, ADMINISTRATOR.

| | |
|---|---|
| 142 | 573 |
| 142 | 700 |
| 142 | 573 |
| 144 | 109 |
| 144 | 116 |
| 146 | 312 |
| 147 | 454 |
| 142 | 573 |
| 149 | 66 |
| 142 | 573 |
| 155 | 7 |

| | |
|---|---|
| 142 | 573 |
| 170 | 576 |
| 170 | 577 |
| 170 | 608 |

| | |
|---|---|
| 142 | 573 |
| 171 | 370 |

COUNTY.—*No Implied Liability for Injuries by Defective Bridges.—
Cases Overruled.*—A county is not liable by implication for dam-
ages caused by negligence of its officers in respect to keeping
bridges in repair, where the county commissioners have no power
to appropriate county funds for that purpose, except when and so
far as the road district is unable to make the repairs, and there is
no statute giving a right of action against the county for its negli-
gence or that of its commissioners, or authorizing the use of county
funds to pay damages caused thereby. *House* v. *Board, etc.,* 60
Ind. 580, and the cases following it, so far as they declare the doc-
trine of implied liability of counties for the negligence of their
officers in erecting and keeping bridges in repair, are overruled.

SAME.—*Liability for Acts or Omissions of Officers.*—Counties, being
subdivisions of the State and instrumentalities of government exer-
cising authority given by the State, are no more liable for the acts
or omissions of their officers than the State.

( 573 )

SUPREME COURT.—*Overruling Decision or Series of Decisions.—Appellate Procedure.*—It is the duty of the court to overrule a decision or series of decisions, if clearly incorrect either through a mistaken conception of the law or through misapplication of the law to the facts, if no injurious results would follow from their overthrow.

From the Newton Circuit Court.

*S. P. Thompson, Stuart Bros. & Hammond,* for appellant.

*R. W. Marshall, Cummings & Darroch* and *J. T. Brown,* for appellee.

MONKS, J.—This was an action by appellee to recover damages for the death of his intestate, caused, as is alleged, by a defective approach to a bridge over a watercourse. This action was commenced in Jasper county, and the venue changed to the court below. To the complaint, which was in one paragraph, appellant demurred for want of facts, which was overruled. An answer of general denial was filed; the cause was tried by a jury; a special verdict was returned; and over a motion for a *venire de novo,* a motion for judgment in favor of appellant on the special verdict, a motion for a new trial, and a motion in arrest, judgment was rendered against appellant for six thousand dollars.

Appellant assigns as error the action of the court in overruling the demurrer to the complaint and the motion in arrest of judgment.

Appellant earnestly insists that "there is no liability by counties for injuries caused by the negligence of its officers in constructing or in repairing or failing to repair bridges over water-courses, for the reason that there is no statute imposing such liability; the overwhelming weight of authority is to the effect that the duty imposed upon counties to keep bridges in repair does not carry with it an implied liability to answer

in damages for injuries sustained from defective or unsafe bridges; that such liability can only arise from express statutory enactment; and that the case of *Cones* v. *Board of Commissioners of Benton County*, 137 Ind. 404, in effect overruled the former holdings of this court in such cases."

It must be admitted that the decided weight of authority in such cases is as stated by appellant. From the numerous decisions to the effect claimed, we cite the following: *Cones* v. *Board, etc., supra; Smith* v. *Board, etc.*, 131 Ind. 116; *Morris* v. *Board, etc.*, 131 Ind. 285; *Board, etc.*, v. *Dailey*, 132 Ind. 73; *Hollenbeck* v. *Winnebago Co.*, 95 Ill. 148, 35 Am. Rep. 151; *Templeton* v. *Linn Co.*, 22 Ore. 313 (15 L. R. A. 730); *Manuel* v. *Board, etc.*, 98 N. C. 9; *White* v. *Commissioners*, 90 N. C. 437, 47 Am. Rep. 534; *Wood* v. *Tipton Co.*, 7 Baxter, 113, 32 Am. Rep. 551; *Brabham* v. *Supervisors*, 54 Miss. 363, 28 Am. Rep. 352; *White* v. *County of Bond*, 58 Ill. 297, 11 Am. Rep. 65; *Hedges* v. *County of Madison*, 6 Ill. 567; *Lorillard* v. *Town of Monroe*, 11 N. Y. 392, 62 Am. Dec. 120; *Askew* v. *Hale County*, 54 Ala. 639, 25 Am. Rep. 730; *Granger* v. *Pulaski County*, 26 Ark. 37; *Downing* v. *Mason County*, 87 Ky. 208, 12 Am. St. Rep. 437; *Reardon* v. *St. Louis County*, 36 Mo. 555; *Swineford* v. *Franklin County*, 73 Mo. 279; *Clark* v. *Adair County*, 79 Mo. 536; *Gilman* v. *County of Contra Costa*, 8 Cal. 52, 68 Am. Dec. 290, and note on pages 294 and 295; *Barnett* v. *County of Contra Costa*, 67 Cal. 77; *Scales* v. *Chattahoochee County*, 41 Ga. 225; *Board, etc.*, v. *Riggs*, 24 Kan. 255; *Fry* v. *County of Albemarle*, 86 Va. 195, 19 Am. St. Rep. 879; *Watkins* v. *County Court*, 30 W. Va. 657; *Woods* v. *County Commissioners*, 10 Neb. 552; *Board, etc.*, v. *Mighels*, 7 Ohio St. 109; *Baxter* v. *Turnpike Co.*, 22 Vt. 114

(123); *Ward* v. *County of Hartford*, 12 Conn. 404; *Commissioners* v. *Martin*, 4 Mich. 557, 69 Am. Dec. 333; *Adams* v. *President*, etc.; 1 Me. 361; *Mitchell* v. *City of Rockland*, 52 Me. 118; *Altnow* v. *Town of Sibley*, 30 Minn. 186, 44 Am. Rep. 191; *Dosdall* v. *County of Olmsted*, 30 Minn. 96, 44 Am. Rep. 185; *Board*, etc., v. *Strader*, 18 N. J. L. 108; *Cooley* v. *Freeholders*, 27 N. J. L. 415; *Young* v. *Commissioners*, (S. C.) 2 Nott & Mc. C. 537; *Farnum* v. *Town of Concord*, 2 N. H. 392; *Eastman* v. *Meredith*, 36 N. H. 284, 72 Am. Dec. 302; *Morey* v. *Town of Newfane*, 8 Barb. 645; *Heigel* v. *Wichita Co.*, 84 Tex. 392, 31 Am. St. Rep. 63, and note pp. 65 and 66; *Ensign* v. *Board*, etc., 25 Hun, 20; *Albrecht* v. *Queens County*, 32 N. Y. Supp. 473; *Smith* v. *Board*, etc., 46 Fed. Rep. 340; *Barnes* v. *District of Columbia*, 91 U. S. 540; *Bailey* v. *Lawrence Co.*, (S.D.), 59 N. W. Rep. 219; Cooley Const. Lim. (6th ed.), 301; 1 Dillon Munic. Corp., sections 25, 26; 2 Dillon Munic. Corp., sections 996, 997, 999; 4 Am. and Eng. Ency. of Law, pp. 364, 367, and notes; 15 Am. and Eng. Ency. of Law, 1143–4, and cases cited in note 1; 1 Beach Pub. Corp., section 734; Tiedeman Munic. Corp., sections 3, 325.

By common law the inhabitants of a county were required to repair bridges over water-courses. *Board*, etc., v. *Bailey*, 122 Ind. 46 (48); *State* v. *Gorham*, 37 Me. 451; *State*, ex rel., v. *Board*, etc., 40 N. J. L. 302; *State* v. *Hudson County*, 30 N. J. L. 137; *Rex* v. *Oxfordshire*, 16 East, 223.

Yet it is settled law that counties were not liable at common law for injuries caused by negligence in failing to keep such bridges in repair. *Cones* v. *Board*, etc., *supra*, and authorities heretofore cited.

It is a well settled proposition that when subdivisions of a State are organized solely for a public purpose by a

general law, no action lies against them for an injury received by any one on account of the negligence of the officers of such subdivision, unless a right of action is expressly given by statute; that such subdivisions, as counties and townships, are instrumentalities of government and exercise authority given by the State, and are no more liable for the acts or omissions of their officers than the State. *Cones* v. *Board, etc., supra; Morris* v. *Board, etc., supra; Board, etc.,* v. *Dailey, supra; Smith* v. *Board, etc., supra; White* v. *Board, etc.,* 129 Ind. 396; *Abbett* v. *Board, etc.,* 114 Ind. 61, and cases cited on page 63; *Freel* v. *School City,* 142 Ind. 27; *Summers* v. *Board, etc.,* 103 Ind. 262; *Board, etc.,* v. *Boswell,* 4 Ind. App. 133; *Edgerly* v. *Concord,* 62 N.H. 8, 13 Am. St. Rep. 533; *Goddard* v. *Inhab. of Harpswell,* 84 Me. 499, 30 Am. St. Rep. 373, and note on pp. 398, 402; *Howard* v. *City of Worcester,* 153 Mass. 426 (12 L. R. A. 160), 25 Am. St. Rep. 651; *Larrabee* v. *Inhab. of Peabody,* 128 Mass. 561; *Clark* v. *Inhab. of Waltham,* 128 Mass. 567; *Hill* v. *City of Boston,* 122 Mass. 344, 23 Am. St. Rep. 332; *Wixon* v. *Newport,* 13 R. I. 454, 43 Am. Rep. 35; *Finch* v. *Toledo Board of Education,* 30 Ohio St. 37, 27 Am. Rep. 414; *Lane* v. *Township of Woodbury,* 58 Iowa, 462; *Flori* v. *St. Louis,* 69 Mo. 341, 33 Am. Rep. 504; *Bigelow* v. *Inhab. of Randolph,* 14 Gray (Mass.), 541; *Ford* v. *School District, etc.,* 121 Pa. St. 543 (1 L. R. A. 607), and all authorities cited on the proposition concerning bridges.

In *Board, etc.,* v. *Chipps, Admr.,* 131 Ind. 56 (16 L. R. A. 228), this court said: "The decided weight of authority is that, in the absence of a statute upon the subject, a county is not liable for a failure to keep its bridges in repair.   Elliott Roads and Streets, p. 42."

It was held by this court in *Smith* v. *Board, etc., supra,* that a county is not liable for an injury to a

servant, sustained without his fault, while engaged in tearing down one of its bridges, although he worked under the immediate charge of its agent, who was known by the board of commissioners to be incompetent, which incompetency was the proximate cause of the injury. The court said : "A county is a civil or political division of the State, created by general laws to aid in the administration of the government, and in the absence of a statute, imposing special duties with corresponding liabilities, is no more liable for the tortious acts of negligence of its officers and agents, than the State."

In *Morris* v. *Board, etc., supra,* this court held that a county was not liable in an action for damages resulting from a failure of the board of commissioners to keep the jail in a healthy and inhabitable condition. The court said : "The most logical and generally accepted theory is, that political subdivisions, such as counties and townships, are created to give effect to, and enable citizens to exercise the right of local self-government. *State, ex rel.,* v. *Denny,* 118 Ind. 449 (4 L. R. A. 65) ; *White* v. *Board, etc.,* 129 Ind. 396. Such subdivisions are instrumentalities of government, and exercise authority delegated by the State, and act for the State. As the State is not liable for the acts or omissions of its officers, neither should a political subdivision of the State be liable for the acts or omissions of its officers, as relating to political powers."

*White* v. *Board, etc., supra,* and *Summers* v. *Board, etc., supra,* are to the same effect. This court held in *Board, etc.,* v. *Dailey, supra,* that a county is not liable for damages occasioned by the negligence and carelessness of the board of commissioners in the care and control of the court house. The court said : "It is now well settled that counties are involuntary corporations, organized as political subdivisions of the State for gov-

ernmental purposes, and not liable any more than the State would be liable, for the negligence of its agents or officers, unless made liable by statute."

In *Cones* v. *Board, etc., supra,* this court held that a county could not be held liable for personal injuries sustained while traveling upon a free gravel road of the county, and by reason of the defects in the construction and repair of such road. The court also expressly declared that the county was not liable at common law for the negligence of its officers, and that no liability existed by statute with reference to bridges. The court said : ."It is quite true that the principle adopted in the bridge cases is in perfect analogy to the case before us, and if we would be consistent, those cases would control the present; but we are fully convinced that the principle there adopted of an implied liability is not in harmony with the great weight of authority, ancient and modern. * * * The liability did not exist at common law and does not exist by statute with respect to bridges or highways, and the objections to liability are well stated in *Hollenbeck* v. *County of Winnebago,* 95 Ills. 148, as follows : 'No reason is perceived why a county should be held to respond in damages for the negligence of its officers while acting in the discharge of public corporate duties enjoined upon them by the laws of the State. * * * Clothed with but a few corporate powers, and these not of a private character. * * * In fact, the powers and duties of the counties bear analogy to the governmental functions of the State at large, that as well might the State be held responsible for the negligent acts of its officers, as counties.' * * * It will be found that the authorities upon which cities and towns, as municipal corporations, are held liable for the results of the negligence of official duties, make this distinction : that such municipalities are voluntary cor-

porations, organized for corporate purposes and possess-
ing legislative, administrative and judicial functions
not possessed to the same degree by counties or town-
ships, and that they exercise and enjoy advantages
purely local and which are independent of the State,
and inure to their benefit as distinguished from that of
the State.

"We are aware that profound jurists do not agree
with the doctrine that cities and towns are less govern-
mental subdivisions of the State * * than counties or
townships, but, aside from the reasons so stated for the
support of the distinction, it is plain to us that counties
have no such power as cities or towns to ordain in a
corporate capacity, what improvements shall be made,
the free choice of agents to make them, and the discre-
tion as to the rate of the levy to be made for the same.
Nor have counties the express power, nor the power
necessarily implied, to raise funds to pay damages for
injuries, unless we imply this power, not from legislative
grant, but from the liability implied in any case.

"General powers are not extended to counties, but
the measure of their privileges must be found expressed
by, or necessarily implied from, some statute."

The doctrine declared in *House* v. *Board, etc.*, 60 Ind.
580, and the cases following it is, that the laws of this State
concerning the building and repair of bridges imposed
the duty upon counties to keep public bridges in such
repair that they are reasonably safe for travel, and gave
them ample power to provide the means necessary to
make such repairs, and that, therefore, there was an
implied liability to answer in damages for injuries from
a failure to discharge that duty.

But even if the doctrine of implied liability from a
duty enjoined, and the provision of means for the per-
formance of that duty declared and applied in the bridge

cases is a correct and not an erroneous statement of the law, it yet remains for us to determine whether the cases named can be sustained on this ground, to do which we must ascertain whether the Legislature has given the boards of commissioners the power and provided them with the means and instrumentalities to cause the bridges in their respective counties to be kept in repair, for, unless this has been done, no liability can be implied, even though the doctrine of implied liability is correct.

"The first section of the act, to provide for the erection and repair of bridges (section 2885, R. S. 1881; section 3275, R. S. 1894), provides: 'That whenever, in the opinion of the county commissioners, the public convenience shall require that a bridge shall be repaired or built over any water-course, they shall cause survey and estimate therefor to be made and direct the same to be erected.'"

The second section (section 2886, R. S. 1881; section 3276, R. S. 1894) provides: "If the estimate therefor shall exceed the ability of the road district in which such bridge is to be built, by the application of its ordinary road work and tax, to perform, the county commissioners may make an appropriation from the county treasury to build or repair the same."

The third section (section 2837, R. S. 1881, section 3277, R. S. 1894,) enacts that "Such board shall receive and appropriate all donations for the erection and repair of bridges; they shall also aid the same, when of general importance, by advances from the county treasury, and shall make such regulations in reference to payments and kinds of bridges as to them shall seem proper: *Provided, however,* That if the board of commissioners of any such county shall not deem any such bridge of sufficient importance to make an appropria-

tion from the county treasury for the erection or repairs
thereof, the trustee of any township * * may appropriate
any part of the road tax fund in the township treasury
for that purpose, if he shall deem it right and expe-
dient so to do."

And section 11 (section 2892, R. S. 1881; section
3682, R. S. 1894) provides that: "The board of commis-
sioners of such county shall cause all bridges therein to
be kept in repair, and shall cause the township super-
intendent of the proper road district to keep in a con-
spicuous place, at each end of any bridge in his district,
whose chord is not less than twenty-five feet, the fol-
lowing notice in large English characters: 'One dollar
fine for riding or driving on this bridge faster than a
walk.' And if any person shall ride or drive over any such
bridge faster than a walk, for any such offense he shall
forfeit and pay one dollar, to be recovered by the
proper township superintendent before any justice of the
peace of the proper county; which shall be applied to
the repairs of such bridge."

It will be seen from an examination of these sections,
which must be construed together, that the power of the
board of commissioners to appropriate the county funds
for the repair of bridges is limited to certain cases.
While the county is required by the eleventh section to
cause the bridges in the county to be kept in repair, the
expense of the same under section 2, unless too great,
must be borne by the road district alone, for the reason
that the board of commissioners can only make an
appropriation out of the county treasury to repair
a bridge, in cases where the estimates therefor exceed
the ability of the road district, by application of its
ordinary road work and tax to perform. If the road
district is able, by its ordinary road work and tax, to
make the repairs, the board of commissioners have no

power to appropriate the county funds to pay for repairing the same. In such a case the board is powerless; the supervisor of a road district is a township, not a county officer, and is not under the control of the county commissioners. He is an independent agent, subject only to the control, in some degree, of the township trustee. Sections 6818–6838, R. S. 1894. He does not represent the county, and the county is not responsible for his acts. *Dooley* v. *Town of Sullivan*, 112 Ind. 451 (454–455); *Vigo Township* v. *Board, etc.*, 111 Ind. 170; *Abbett* v. *Board, etc., supra*, on page 65.

Neither has the board of commissioners any power to appropriate the road tax fund or any other township fund in the hands of the county treasurer, township trustee, or supervisor, to pay the expense of said repairs. *Vigo Township* v. *Board, etc., supra*.

The board of commissioners might, perhaps, institute an action, and by writ of mandamus compel him to make such repairs. Certainly the county would not be held liable for the failure of the board of commissioners to institute an action against such supervisor, and by writ of mandamus compel him to repair a bridge.

Under section 3 the board of commissioners have no power to appropriate county funds for the repair of a bridge, unless they deem it of sufficient importance. If they do not deem such bridge of sufficient importance to make an appropriation out of the county funds for its repair, then they have no power to make the appropriation, and cannot rightfully do so.

It certainly cannot be claimed that, under these sections, the board of commissioners have any general power to make appropriations of county funds for the repair of bridges. Such appropriations can only be made in certain cases, and upon certain contingencies. And in cases where they cannot make such appropria-

tion, no way is provided by which they can compel such repairs to be made by the road supervisor, except, perhaps, by expensive and frequent litigation, which was certainly not the intent of the Legislature.

This act was considered and construed by this court in the *Driftwood, etc., Turnp. Co.* v. *Board, etc.,* 72 Ind. 226, which was an action on a contract made by the county to keep the approaches to a bridge in repair. Worden, J., speaking for the court, said: "The mode in which the county is bound to perform that duty is specifically pointed out by statute, and a contract which contravenes that mode, and substitutes another, must be void. If the contract sued on is valid, and has been broken, the damages of the appellant must be paid out of the county treasury. But it was not contemplated that the expense of repairing bridges should be paid out of the county treasury, except upon a contingency. By the first section of the act above set out, when a bridge is to be repaired or built, the commissioners are to 'cause surveys and estimates therefor to be made, and direct the same to be erected.'

"Why were surveys and estimates to be made? The second section answers this question. It is because *the appropriation from the treasury* depends upon the question whether the estimate exceeds the ability of the road district, by the application to the work of the ordinary road work and tax of the district. It was not contemplated that the expense should be borne by the county treasury, except the excess beyond the ability of the road district. If this contract were to be held valid, the county would have to pay all the expense of the repairs, in the way of damages, no portion falling upon the road district. The contract is in violation of the provisions of the statute and void.

"The eleventh section of the statute, making it the

duty of the commissioners to cause all bridges in the county to be kept in repair, must be construed in connection with the first and second. While the commissioners must cause the bridges to be kept in repair, the expense must be borne by the road district, so far as it is able, according to the second section, and the residue by the county.

"The third section provides that the commissioners shall aid in the erection and repair of bridges, when of general importance, by advances from the county treasury. The contract cannot be upheld by virtue of this section. * * * *

"The obligation to aid by advances from the county is not unconditional, as is seen by the proviso to the section. It depends upon whether or not the board of commissioners shall deem the bridge to be of sufficient importance to make an appropriation from the county treasury for the erection or repair thereof. The duty of the board in making or withholding advances from the county treasury, involves a question of judgment as to the importance of the bridge, and this judgment must be exercised as to the importance of the bridge at the time an advance is made. The board could not, by a contract to make advances in the future, preclude itself, or its successors from the right and duty to determine, at the time an advance is sought, whether the bridge has the importance required, in order to justify an advance from the county treasury."

It follows, therefore, that the board of commissioners can only cause bridges to be repaired by an appropriation of county funds to pay the expense, when the road district is not able, by its road work and tax, to make the same, and the commissioners deem the bridge of sufficient importance to appropriate the county funds for that purpose, and in such case the expense must be borne

by the road district, so far as it is able, and the residue by the county.

If this is a proper construction of said act, and it was so decided in *Driftwood, etc., Turnp. Co.* v. *Board, etc., supra,* the board can in no case pay for repairs out of the county treasury, unless the road district first applies its ordinary road work and tax in making the repairs, then the board may, if it deem the bridge of sufficient importance, pay the residue out of the county treasury. So that in all cases where there is a refusal to apply the ordinary road work and tax of the road district in repairing a bridge, the only way they can cause the repairs to be made, is by compelling the road supervisor to make such repairs, and no power has been given, or adequate means provided, by which they can coerce him, or any other officer, to make such repairs.

If it were conceded that when the duty is imposed upon boards of commissioners to cause all bridges to be kept in repair, and they have power to make the appropriations from the county treasury for that purpose, there is an implied liability to respond in damages for an injury resulting from a failure to discharge that duty, yet no such liability could be implied in this State, for the reason that the boards of commissioners have no power to appropriate the county funds for such purpose, except upon a contingency over which they have no control, and then only when in their judgment the bridge is of sufficient importance.

It was said in the case of *House* v. *Board, etc., supra,* that "cities are held liable for failing to keep their streets in repair, though no statute expressly provides for such liability, and that the same principle will apply as well to a county as a city."

There is a wide difference, however, between the powers of boards of commissioners with reference to

bridges and the powers of cities over the streets.   Cities may ordain what improvements shall be made and how the expense of the same shall be paid and may choose the agents to make them.   The city council may fix the date of its meetings and may be called in special session by the mayor or five councilmen at any time.   The city has officers whose duty it is to keep all the streets in repair, and who have ample authority at all times to act for the city in making such repairs, and who have constant supervision over the streets.

The board of commissioners meet in regular session only four times a year, in March, June, September and December, and have no power to meet at any other time except when called in special session by the county auditor when the public interest requires it, and he is the sole judge of the 'necessity of such special sessions. Sections 5736, 5737, R. S. 1881, sections 7821, 7822, R. S. 1894.

The auditor is an independent public agent who does not act for or represent the county, and for whose conduct the county is in no way responsible.   *Vigo Township* v. *Board, etc., supra; Dooley* v. *Town of Sullivan, supra; Abbett* v. *Board, etc., supra.*   So that whether the board shall meet in special session to cause a bridge to be repaired depends upon an officer who does not represent the county and for whose acts the county is not responsible.

A county board cannot make a valid contract for the repair of a bridge except when in legal session as a board.   Their powers are created and defined by statute. They are agents with limited powers and for any act done by them not within the scope of their powers the county is not liable.   *McCabe* v. *Board, etc.*, 46 Ind., 380 ( 383 ); *Board, etc.*, v. *Ross*, 46 Ind. 404; *Campbell* v. *Brackenridge*, 8 Blackf. 471; *Potts* v. *Hender-*

*son*, 2 Ind. 327; Tiedeman on Munic. Corp., section 3.

They are authorized by statute to appoint a superintendent to erect a bridge, but not to keep bridges in repair. Section 2888, R. S. 1881, section 3278, R. S. 1894.

When the board is not in session no one is or can be authorized, as the law now stands, to represent or act for or bind the county in keeping bridges in repair, or in contracting for the repair of the same. *Driftwood, etc., Turnp. Co.* v. *Board, etc., supra,* on pages 239, 240; *Potts* v. *Henderson, supra; People, ex rel.,* v. *County Officers,* 15 Mich. 85. So that if the board of commissioners had the power to appropriate the county funds to pay for the expense of repairing bridges in all cases, without any limitations or conditions whatever, they could not exercise that power when not in session; and as neither they nor any one representing or acting for the county can call them in special session, most certainly it could not be said, even in that case, with all the powers named, that they had been given the power or provided with the means and instrumentalities necessary to keep the bridges of the county in repair, unless they also, at least, had the power to meet as a board at any time of their own volition.

The authority of the board of commissioners acting as a board of turnpike directors in respect to free gravel roads, is much more like the power cities have in regard to streets than is that of the board of commissioners in regard to bridges, and there is therefore much greater reason for holding that the doctrine of implied liability applies to counties with reference to free gravel roads than with respect to bridges.

The board of commissioners is by statute constituted a board of turnpike directors having exclusive management and control of the free gravel roads of the county.

The board is required to divide the county into three districts as nearly equal in number of miles of free gravel road as practicable, and each member is given personal control and supervision over one of such districts, and has the power to keep the same in repair subject to the rules and regulations of the board. The board fixes the time of its meetings and is empowered to appoint persons to superintend the work of repairs and let contracts therefor; contract for, or condemn and take material for, the repair of such roads, and issue certificates therefor; to cause to be levied and collected taxes to pay for the expense of keeping such roads in repair. These powers have been changed to some extent by the amendment of 1895. Sections 6868–6875, and sections 6912, 6933, 6935, 6950, 6958, R. S. 1894, Acts 1895, p. 363.

Yet, as we have seen, this court held in *Cones* v. *Board, etc., supra,* and we think correctly, that there is no implied liability against the county in favor of one injured by reason of a failure to keep a free gravel road in repair.

It is the duty of township trustees and road supervisors, at all times, to keep the bridges in repair and protect them from injury. Section 6818, 6832 to 6838, R. S. 1894. *Board, etc.,* v. *Bailey,* 122 Ind. 46, on pages 49, 50, *supra.* They also have the power to construct bridges. Sections 3276, 3277, 6833, R. S. 1894; section 3, Acts 1885, p. 202. And the township trustee has the power to levy an additional road tax and expend the same, as well as the ordinary road tax, in the construction and repair of bridges. Section 6834, R. S. 1894; section 4, Acts 1885, p. 202.

The township trustee had no power to levy an additional road tax to be used for the construction and repair of bridges until the act of 1885 was passed. Prior to

that date, only the ordinary road tax was used for that purpose. Section 3276, 3277, R. S. 1894, *supra*. For each failure of the road supervisor to perform his duty as required by law, he is liable to a penalty of ten dollars, to be recovered by the township trustee, and all sums are for the benefit of the road district for which he was supervisor. Section 6838, R. S. 1894. It will be seen by an examination of these statutes that subsequent legislation has somewhat enlarged the powers and duties of township trustees and road supervisors in regard to bridges, and thus to some extent removed the reasons upon which the case of *House* v. *Board, etc.*, and the cases following it were predicated. *Board, etc.*, v. *Bailey, supra*, on pages 49–50. In the case last cited, Mitchell, J., speaking for the court, said: "The duty of erecting and repairing bridges over watercourses is imposed upon the board of commissioners, while the general duty of keeping such highways and bridges in repair is laid upon township trustees and road supervisors." It is a principle established by all the authorities, that where a person or corporation is free from fault, there is no liability for the negligence of a person not voluntarily chosen by such person or corporation to perform an act. *Dooley* v. *Town of Sullivan, supra; Abbett* v. *Board, etc., supra.*

It is clear, however, from a consideration of all the statutes concerning the powers and duties of boards of commissioners and other officers, and especially those in regard to bridges, that the same did not then, and do not now, give any support to the assumption in those cases that the board of commissioners had been given either the unconditional power to contract for the construction or repair of bridges and appropriate the county funds to pay therefor or provided with the means and

instrumentalities necessary to cause or compel the same to be done.

There is no provision in the statute which confers a right of action against the county for the negligent acts of the county or its board of commissioners in the management of the affairs of the county. No authority has ever been given the board of county commissioners to appropriate the county funds to pay damages in such cases, nor to levy and collect taxes for any such purposes. No fund has ever been provided, nor has any provision been made for raising money by taxation or otherwise to pay such damages. *Cones* v. *Board, etc., supra,* on page 408. The power to allow claims against the county, and pay judgments against the county, creates no liability and gives no right of action to anyone. Such powers were given that the board of commissioners might pay just claims against the county, and not create a liability in favor of any one.

The principle asserted in *House* v. *Board, etc., supra,* and the cases following it, in regard to the implied liability of counties, cannot be reconciled with those cases in this and other States which affirm the rule that a county is a subdivision of the State for governmental purposes, and is not liable for the negligence of its officers unless a right of action is expressly granted by statute.

But it is earnestly contended by appellee that if the rule of implied liability declared in the bridge cases was erroneous, the doctrine of *stare decisis* should be invoked to protect it, and the same should only be changed by legislation.

While the rule of *stare decisis* is a salutary one, yet it is not to be applied in all cases. If a decision or series of decisions are clearly incorrect, either through a mistaken conception of the law or through a misapplication

of the law to the facts, and no injurious results would follow from their overthrow, and especially if they were injurious or unjust in their operation, it is the duty of the court to overrule such cases.    6 Alb. Law Jour. 329 ; *Church* v. *Brown*, 21 N. Y. 315 (335).

But if a principle of law, doubtful in its character or uncertain in the subject-matter of its application, has been settled by a series of decisions until it has become an established rule of property, or the basis of contracts, it should not be overthrown except from the most urgent considerations of public policy.   *Hines* v. *Driver*, 89 Ind. 339 ; *Grubbs* v. *State*, 24 Ind. 295 ; *Harrow* v. *Myers*, 29 Ind. 469 ; *Rockhill* v. *Nelson*, 24 Ind. 422 (424).

To that extent only are courts ordinarily restrained from correcting mistakes which they may have made. It must not be understood, however, that a previous line of decisions affecting even property rights can in no case be overthrown ; if the evil resulting from the principle so established is greater than the mischief to the community could possibly be from a disregard of former adjudications they should be overruled and a new rule declared.    *Boon* v. *Bowers*, 30 Miss. 246.

What was declared by this court on this question in *Paul* v. *Davis*, 100 Ind. 422, is applicable here.    The court said that "A judicial decision does not make unalterable law, nor is it law in the sense that statutes are law.    It was justly said by Senator Platt, in *Yates* v. *Lansing*, 9 Johns. 415, that 'The decisions of courts are not the law ; they are only evidence of the law.'    In another case it was said : 'I hope we shall consider what a decision really is, and treat it accordingly ; not as the law, nor as giving the law, but simply as evidence of the law : and not conclusive evidence, but only *prima facie* evidence of what the law is.'   *Henry* v. *Bank of Salina*, 9 Hill, 535.   Chancellor Kent says : 'Even a series of

decisions are not always conclusive evidence of what is law; and the revision of a decision very often resolves itself into a mere question of expediency, depending upon the consideration of the importance of certainty in the rule and the extent of property to be affected by a change of it.'    Again he says : 'It is probable that the records of many of the courts in this country are replete with hasty and crude decisions ; and such cases ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error.'  1 Kent Com. 477. The Lord Chancellor of England said to the House of Lords : 'You are not bound by any rule of law which you could lay down, if, upon subsequent occasion, you should find reason to differ from that rule, that is, like every court of justice, and I regard this as a court of justice; it is inherent in the nature of every court of justice that it should have liberty to correct any error into which it may have fallen.'  *Bright* v. *Hutton,* 12 Eng. Law and Eq. R. 1, *vide,* p. 15.   In the case cited the earlier case of *Hutton* v. *Upfill,* 2 H. L. Cases, 674, was overruled, although it was a case growing out of the same subject-matter, and involving the same principle and substantially the same interests. The law is a science of principles, and this cannot be true if a departure from principle can be perpetuated by a persistence in error.   If it be correct to affirm that there can be no departure from former decisions, then it would be true, as it has been well said that ''In such cases *summum jus* might be *summa injuria.''* Ram Legal Judg. 201.

''The supreme court of California, in discussing this general subject, said : 'But it is a solecism to say that causes should be tried upon wrong principles * * whether

it be for the purpose of justice, or not, so to decide them. The law is not so false to itself as to require its own permanent overthrow, unless the subversion be necessary to the public interests; and whether it be so necessary in a given case, or not, is for the court to decide, as a matter of legal discretion, whenever the rule is invoked.' *Hart* v. *Burnett*, 15 Cal. 530, *vide*, op. 607. Consistency, purchased by adherence to decisions at the sacrifice of sound principle, is dearly bought. But we deem it unnecessary to further pursue this discussion, for we know quite well that there is not a court in England or America, that has not corrected erroneous departures from the principles of justice, by overthrowing previous decisions.    *    *    *

"Much as we respect the principle of *stare decisis*, we cannot yield to it, when to yield is to overthrow principle and do injustice. Reluctant, as we are, to depart from former decisions, we cannot yield to them, if, in yielding, we perpetuate error and sacrifice principle. We have thought it wisest to overrule outright rather than to evade, as is often done, by an attempt to distinguish, where distinction there is none. We have preferred the censure that sometimes falls upon us rather than to undertake to distinguish, and thus make 'confusion worse confounded,' where there is no room to limit or distinguish."

The case of *House* v. *Board, etc.,* *supra*, and cases following, do not involve property rights, nor has the rule, which they declare, in any sense become a rule of property, or a basis for contracts. The overruling of those cases will not produce uncertainty in titles, or introduce doubt and confusion in questions of property or contracts. Under such circumstances, it is the duty of the court to correct its own errors, and the doctrine of *stare decisis* cannot be successfully invoked to perpetu-

ate them.    *Paul* v. *Davis, supra; Rockhill* v. *Neilson, supra; Hines* v. *Driver, supra; Linn* v. *Minor,* 4 Nev. 462 ; *McDowell* v. *Oyer;* 21 Pa. St. 417 (423).

This case is within the principle established in *Hines* v. *Driver, supra,* and *Paul* v. *Davis, supra.*

It is urged by appellee, that by holding the county liable in such cases as this, the boards of commissioners will be convinced that it is cheaper to keep the bridges in repair than to pay damages for injuries.

The enforcement of the penal statutes and the creation of personal liability, if it does not now exist, for injuries caused by neglect of official duty, would probably be more convincing to the officer than taking the public funds to pay such damages.

While the doctrine declared in the bridge cases might be properly overruled on other grounds stated in this opinion, we prefer to base our action on the broad ground that counties, being subdivisions of the State, are instrumentalities of government and exercise authority given by the State, and are no more liable for the acts or omissions of their officers than the State.

The case of *House* v. *Board, etc., supra,* and the cases following it, so far as they declare the doctrine of implied liability of counties for negligence of their officers in erecting or keeping bridges in repair, are overruled.

It follows that the court erred in overruling the demurrer to the complaint and the motion in arrest of judgment.    There are other reversible errors in the record, but it is not necessary to consider them.

Judgment reversed, with instructions to sustain the demurrer to the complaint, and for further proceedings not in conflict with this opinion.    All concur.

Filed November 25, 1895.