## KARR ET AL. *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF PUTNAM.

[No. 21,292.  Filed June 12, 1908.]

1. APPEAL.—*Parties.—Names.—Jurisdiction.—Waiver.*—Defects in the names of parties in the assignment of errors will be disregarded, where the names used are *idem sonans* with the correct names, such defects not being of a jurisdictional nature, and being subject to waiver.  p. 573.

2. PLEADING. — *Complaint. — Injunction. — Drains. — Parties.—Assumptions.*—A complaint by a board of commissioners to enjoin threatened injuries to certain bridges, alleging that defendants claim to have some contract to tear down and remove such bridges, but that such board has never "been made a party to any drainage proceeding * * * or action of any kind in any court" or had any notice of any such proceeding or action of any kind, forms a sufficient basis for assuming that there was a drainage proceeding and that it was in a court of general jurisdiction.  p. 575.

3. BRIDGES.—*Ownership.—Counties.*—In the absence of any statutory provision for the local ownership, by counties or townships, of a bridge upon a public highway, there is no such ownership.  p. 575.

4. SAME.—*Construction.—Counties.—Townships.*—Under the law prior to 1905, counties had the discretionary right to assist townships in the building of bridges; and township trustees had the right to appropriate any part of the township road tax for such purpose.  p. 576.

5. SAME.—*Injuries to.—Recovery.—Parties.*—For injuries to a bridge built by the township, a right of recovery exists by statute (§§3828, 3830 Burns 1908, §§2892, 2893 R. S. 1881) in favor of the proper township road supervisor.  p. 577.

6. DRAINS.—*Parties.—Township Trustees.—Bridges.—Injunction.*—The township trustee is the proper party to a drainage proceeding, where a bridge will be injured by the construction of the contemplated drain; and he is the proper party to maintain an injunction suit to prevent a threatened injury to such bridge.  p. 577.

7. STATUTES.—*Construction.—Subsequent Statutes.—Drains.*—The construction of an act which is plain in itself cannot be controlled by a subsequent act.  p. 578.

8. DRAINS.—*Damages.—Bridges.—Townships.—Statutes.*—The act of 1907 (Acts 1907, p. 508, §3, §6142 Burns 1908), providing that where a drain, sought to be established, extends into another county, the damages to any bridges in such other counties shall

be paid to such counties, contemplates payment to the proper political corporations in such counties, and not to the counties themselves.   p. 578.

9.   BRIDGES. — *County-Line.* — *Ownership.* — Counties, under §3255 Burns 1901, §2884 R. S. 1881, are the legal owners of county-line bridges.   p. 578.

10.   PLEADING.—*Complaint.—Anticipating Defenses.*—A complaint anticipating a defense must state facts sufficient to overcome same.   p. 578.

11.   SAME. — *Complaint.* — *Injunction.—Negativing Jurisdiction.— Drains.*—A complaint alleging that the plaintiff has never "in any way or manner whatever been made a party to any drainage proceeding or proceedings or action of any kind in any court, * * * or in any way appeared to or joined in any proceeding," does not sufficiently show that plaintiff was not a party to a drainage proceeding, such allegation being a legal conclusion.   p. 579.

12.   SAME. — *Complaint.* — *Injunction.—Collateral Attack.—Setting Out Record of Void Proceedings.—Presumptions.*—A complaint to enjoin the enforcement of a void drainage proceeding must set out the record thereof, the presumption being, in the absence thereof, that such record showed the necessary facts to confer jurisdiction.   p. 580.

13.   COURTS.—*Jurisdiction.—Drains.—Bridges.*—A judgment of the circuit court, in a drainage proceeding, ordering the construction of a drain which injures a public bridge, is not void on the ground that the court has no jurisdiction to make such an order.   p. 580.

14.   DRAINS.—*Bridges.—Parties.*—The political corporation having the ownership or legal custody of a public bridge, must be made a party to a drainage proceeding affecting same.   p. 581.

15.   SAME.—*Procedure.—Special.—Code.*—In the absence of any special method of procedure in the drainage laws, the civil code will govern.   p. 581.

16.   SAME.—*Extending into Two or More Counties.—Courts.—Jurisdiction.—Injunctions.*—The circuit court in which a drainage proceeding is begun has jurisdiction to order the construction thereof, though such drain extends into other counties; and injunction will not lie in another court to affect such proceeding.   p. 582.

From Montgomery Circuit Court; *A. F. White,* Special Judge.

Suit by the Board of Commissioners of the County of Putnam against James P. Karr and others.   From a decree for plaintiff, defendants appeal.   Transferred from Appel-

late Court under §1394 Burns 1908, cl. 2, Acts 1901, p. 565, §10. *Reversed.*

*Million & Hanna, M. M. Hathaway* and *Renner & Mc-Nutt,* for appellants.

*John H. James, Thomas T. Moore* and *James P. Hughes,* for appellee.

GILLETT, C. J.—This suit was brought by the Board of Commissioners of the County of Putnam, in the year 1906, to obtain an injunction. We observe in the assignment of errors a slight defect in the naming of the partners composing the American Steel Dredge Works, which was named in the amended complaint as a defendant. The variance comes within the rule of *idem sonans,* and leaves no doubt as to the intendment. We do not regard the defect as jurisdictional, and shall treat it as waived. *Landon* v. *White* (1885), 101 Ind. 249. The latter observation also covers a defect in the naming of appellee.

The amended complaint was in two paragraphs, to each of which a demurrer was overruled. There was a finding for appellee on the first of said paragraphs, and a finding against it on the second. From the final decree which followed, appellants appeal. The only error we shall rule on is based on the overruling of the demurrer to the first paragraph of the amended complaint.

Said paragraph alleges appellee's exclusive control, management, maintenance and ownership of four bridges, having public and greatly used and traveled highways of said county leading to, from and over said bridges, one of which highways is a free macadam road; that three of said bridges are along a natural but non-navigable watercourse running through said county, while the fourth (known as the Parker bridge), which also leads across said stream, is a county-line bridge, and is owned in equal interests by the counties of Putnam and Morgan; that said bridges are of certain

value (which is alleged), and in good condition and repair; that the defendants and each of them are threatening to, and state that they will, unless enjoined, tear down, remove and destroy said bridges, and will cut out, dig, dredge and remove the earth in the channel of said stream and will undermine the stone abutments which give support to said bridges, and make said abutments unsafe to support said bridges, and will destroy them, to the great and irreparable injury of plaintiff in a certain alleged sum. The complaint then proceeds as follows: ''That the defendants and each of them claim to have some right or contract to tear down and remove said bridges and each of said bridges, but plaintiff says that neither the board of commissioners nor any member thereof, nor the county of Putnam, nor any one representing the county of Putnam, nor the board of commissioners of said county, has ever in any way or manner whatever been made a party to any drainage proceeding or proceedings, or action of any kind in any court, and that none of them has ever in any manner whatever been named in any complaint or petition filed in any court, or in any way appeared to or joined in any proceeding, and that the interest, title or right in and to the property described in the complaint has never been described, named or mentioned in any complaint or petition of any kind in any court, and there has never been any action or proceeding of any kind brought or commenced in any court in which it was asked, as against them or either of them, to do the things, or any of them, which defendants are now threatening to do as alleged in the complaint, and that none of them has ever in any way or manner been notified of any such proceedings of any kind or nature whatever, and that no process or notice has ever been served or posted of any drainage proceeding or of any proceedings or actions of any kind in any court, and that none of them has ever had any notice of any proceeding or actions in which it was sought or asked to do

the things, or any of them, which defendants are now threatening to do, or which would in any way interfere with or in any way affect or disturb the right, title or interest in said property over which plaintiff has control, or in and to the property, or any of it, described in plaintiff's complaint."

The fact appears from the record, and in view of the silence of the complaint we may assume, that the drainage proceeding was had in a court of general jurisdiction (it was in fact in the Morgan Circuit Court).

2. The evidence, which is in the record, further shows that said drainage proceeding was instituted while the act of 1885 concerning drainage was in force. As shown, there is an allegation in the complaint of ownership by the county of the various bridges involved, but as we are led to infer from the discussion that all but the Parker bridge, while they are highway bridges extending over watercourses, do not extend over the division line of any county or township, and as there is no allegation that the township trustees of the proper townships were not in court, it appears important, in order to limit the extent of this litigation, if our assumption be correct, to consider whether the county has a standing to complain of an injury to such bridges.

Passing over for the present the question of joint county line bridges, as well as the matter of bridges for the building of which townships have voted aid, we shall proceed to consider the relationship of the county and the township to highway bridges over watercourses, built and maintained under the general statute.

In a strict sense of the term there is no local ownership of public highway bridges, in the absence of provision of statute therefor. They are parts of the general sys-

3. tem of highways which belongs to the state at large, and both the county and the township are charged with certain duties with respect to such bridges as are within their respective jurisdictions. Assuming, as the rec-

ord shows, that the drainage proceeding in question was instituted prior to the taking effect of the highway act of 1905 (Acts 1905, p. 521, §6726 *et seq.* Burns 1905); we shall consider, in view of the limitation in section 123 thereof (§6863 Burns 1905) as to pending proceedings, the condition of legislation on the subject of such bridges at and prior to the operation of such act. Under then existing laws each of said corporations possessed certain duties in respect to the construction and repair of highway bridges over watercourses. See §§3821-3828, 3830 Burns 1908, and §§6834-6836 Burns 1901, §§2885-2893 R. S. 1881 and Acts 1883, p. 62, §§20-22; *Board, etc.,* v. *Allman* (1895), 142 Ind. 573, 39 L. R. A. 58. Bridges on free macadam roads are on the same footing. *Board, etc.,* v. *Mankey* (1902), 29 Ind. App. 55. Section 3823, *supra,* which relates to bridges over watercourses, and which is a part of an act which has been regarded as the governing act for the construction of bridges of that character (*Board, etc.,* v. *Allman, supra; Deweese* v. *Hutton* [1896], 144 Ind. 114), provides that the township trustee may, if the board of county commissioners do not deem a bridge of sufficient importance to justify the making of an appropriation out of the county treasury for the building or repair of it, appropriate any part of the road tax fund in the township treasury for that purpose, if he shall deem it right and expedient so to do. It was stated in *Board, etc.,* v. *Allman, supra,* wherein the bridge legislation of this State was carefully considered, that "it is the duty of township trustees and road supervisors, at all times, to keep the bridges in repair and protect them from injury," citing §§6818, 6832-6838 Burns 1894, Acts 1883, p. 62, §§5, 18-24. Concerning such bridges, it may be said that it is the intendment of the law that counties shall make an appropriation for the building of those which exceed in cost the ability of the district to pay for, by means available for that purpose, pro-

vided the public convenience shall so require; but they have a large, if not uncontrollable, discretion in the premises, and even then their appropriation is in aid of the township. *Board, etc.,* v. *Allman, supra; Deweese* v. *Hutton, supra.* It was held in *Board, etc.,* v. *Allman, supra,* that the right of the county to make repairs depends upon the supervisor's applying the ordinary road work and tax, while in *Deweese* v. *Hutton, supra,* the court stated that ''primarily, bridge repairs are to be made by the road district in which the bridge is situated.'' For fast driving over such a bridge and wilful injuries thereto provision is made by §§3828, 3830, *supra,* for a recovery in favor of the township superintendent, and, by the express terms of the first of said sections, and by the implication of the other, the recovery is to be applied to the repairs of such bridge.

The right to enjoin a threatened injury to the class of bridges referred to, caused by the execution of an order for the establishment of a public drain, cannot be in both corporations, nor can it be said to depend upon such varying circumstances as the size of the bridge, the importance of the highway, the ability of the township, and the taking of steps by the latter to cause the county to make an appropriation for the undertaking. The only reasonable view is that it is proper in proceedings for the construction of public drains to make the township trustee, upon whose township rests the primary duty of making the repairs, a party, as a necessary step in the obtaining of jurisdiction over the class of bridges we are considering. This course finds additional commendation in reason, if damages may be allowed, in that, since the township may be assessed with benefits to highways by the construction of the drain (§5630 Burns 1901, Acts 1885, p. 129, §9), it puts the right to damages for injury to the highway, using that term in its generic sense as including bridges, in the same party, thus avoiding the inequity of charging the township with

benefits to highways while according the damages therefor to another corporation, which may never contribute to the restoration of the bridges.

Counsel for appellee call to our attention the provision of the drainage act of 1907 (Acts 1907, p. 508, §3, §6142 Burns 1908), relative to the assessment of damages, where drains run into another county, on account of injuries to bridges, culverts or roads. This subsequent expression of the General Assembly, if it can be said to reflect light on the legislative view as to the past condition of the law, is not forceful enough to overcome the reasoning upon which our holding is based, but we may say concerning said act that its provision for the payment to the other county should be taken to mean the various political corporations of the county which may be entitled to the same, since it could hardly be assumed that damages to culverts or ordinary roads should be paid to the county for its use and benefit.

As to the Parker or county-line bridge, we are of opinion, in view of the provision for ownership of such bridges found in §3255 Burns 1901, §2884 R. S. 1881, and the general character of the act of which said section is a part, that appellee's allegation of the ownership of said bridge might be borne out by the facts. This being true, there is at least such a showing of ownership by the county of one bridge as to present the question of the sufficiency of the complaint in respect to the effort to show a lack of jurisdiction over the county in the drainage proceeding.

Appellee was not bound to anticipate a defense, but having suggested a possible defense, or given color to the acts of appellant, the pleader was bound to go further and show that such defense did not exist. *Morgan* v. *Lake Shore, etc., R. Co.* (1892), 130 Ind. 101; *Irvin* v. *Rushville, etc., Tel. Co.* (1903), 161 Ind. 524.

Appellants' counsel make the point that the complaint was

insufficient because it failed to show what notice was given, and that it is not sufficient to allege that plaintiff never had any notice. They further amplify or explain this proposition in the portion of their brief devoted to argument by appropriate quotations showing that where a party seeks by his complaint to impeach the judgment of a court of general jurisdiction, on the ground of an absence of legal notice of the pendency of the action, he must allege what is shown by the record in relation to the issuance and service of process upon him. So understanding the point, we proceed to its disposition. Counsel for appellee claim that an averment on the subject of notice is unnecessary, because appellee was not a party to the proceeding. It is true that the complaint alleges that the county was not named in any complaint or petition, but this is not the only way in which it might have been made a party. Section 5624 Burns 1901, Acts 1901, p. 161, §2, provides: ''That in all cases where lands are named in said report as affected by such proposed work, which are not named in the petition, the court shall fix a time for hearing the report, and it shall be the duty of the petitioners, at their own cost, to give ten days' notice to the owners of such lands of the filing of such report in the same manner as is herein required to be given of the filing and docketing of the petition.'' Although this section does not contemplate the entry of a formal order making such omitted landowners parties, yet the taking of such steps does, in legal effect, so constitute them, and as to appellee's allegation that it has never in any way or manner whatever been made a party, we deem it, in view of the peculiar character of the statute, a legal conclusion. See *Wabash R. Co.* v. *Hassett* (1908), *ante,* 370. It appears clear to us that, notwithstanding the averments of the complaint, the county might have been named in the report of the drainage commissioners as having such bridges affected, and that the record might show service upon the county. It would not be necessary to confer juris-

diction, that it should be asked in the report to do any particular thing with reference to such bridges. We are of opinion that appellant's objection is well taken; but

12. getting out on somewhat broader ground, we deem the complaint clearly insufficient, in the absence of any averment as to what the record shows concerning matters which might confer jurisdiction. For instance, as against this collateral attack (and in view of the suggestion of a defense we can only presume that the effort is to impinge upon the order of construction in the drainage proceeding), we would presume that the record showed an appearance by the county, and a consent to the judgment, which would authorize the making of an order upon the subject, even were it not mentioned in the petition or report. See *Indiana, etc., R. Co.* v. *Bird* (1888), 116 Ind. 217, 9 Am. St. 842; *Hudson* v. *Allison* (1876), 54 Ind. 215; *Fletcher* v. *Holmes* (1865), 25 Ind. 458; *Gage* v. *Clark* (1864), 22 Ind. 163.

Counsel for appellee contend that the judgment of the Morgan Circuit Court is open to attack, on the ground that the drainage act cannot be taken to authorize the ma-

13. terial injury or destruction of public property in use by the public. Whatever may be the rule as to such public property of a county as a court-house or jail, we are of opinion that it cannot be affirmed as a matter of jurisdiction that it is incompetent for a court to establish a public drain which would result in the serious injury or destruction of a highway bridge, for so to hold would be to affirm that the existence of such a bridge might afford an insuperable obstacle to the execution of a scheme of drainage of great importance. What the court should do in the premises is one thing, and what it may do, without rendering its judgment void, is quite another. The court had power to decide such questions, if presented, and, in view of the broad grant of authority which courts possess to construct drains, we cannot say that a mere improper use of the power would

render a judgment *ipso facto* void. *Baltimore, etc., R. Co.*
v. *Board, etc.* (1901), 156 Ind. 260.

Counsel for appellants assert that there is no constitutional inhibition upon the taking of public property for public purposes without compensation; and that the framework of the drainage act of 1885, *supra,* does not warrant the assessment of damages to a county or township on account of bridges or highways, but that it is contemplated that repairs or new bridges, made necessary by such a work, shall be paid for out of the public treasury. We need not decide this question in passing on the complaint, but we may say that, since all landowners—and this includes the holders of easements (*Indianapolis, etc., Gravel Road Co.* v. *State* [1886], 105 Ind. 37)—affected by the proposed work are required to be made parties, it appears to us that it is necessary, either by the original or by supplemental proceedings, to take the proper steps to make the political subdivision having the ownership or *quasi*-ownership of the bridge or highway affected, a party, in order that the public interest may be represented in determining whether the taking is necessary. See *Wright* v. *Wilson* (1884), 95 Ind. 408.

There is a further question involved in this case, which ought to be determined, since it will at once arise when the cause reaches the court below, and that is whether a suit by way of injunction can be maintained in the Putnam Circuit Court. There can be no doubt of the right of the Morgan Circuit Court to order and to complete the construction of a drain extending into Putnam county (*Shaw* v. *State, ex rel.* [1884], 97 Ind. 23; *Meranda* v. *Spurlin* [1885], 100 Ind. 380), and this is our conclusion notwithstanding subsequent legislation. In the absence of any provision of the drainage act to the contrary, we may properly resort to the general procedure provided for the government of the courts wherein such jurisdiction is vested. See *Hart* v. *Scott* (1907), 168 Ind. 530,

Section nine of the act of 1852 (2 R. S. 1852, p. 5, §1438 Burns 1908), relative to the organization of circuit courts, etc., provides that "when the subject-matter of any [suit in] such court shall be situate in two or more counties, the court which shall first take cognizance thereof shall retain the same." Section eight of said act (§1437 Burns 1908) provides that "such courts shall have power to make all proper judgments, sentences, decrees, orders, and injunctions, and to issue all process, and to do such other acts as may be proper to carry into effect the same, in conformity with the Constitution and laws of this State." Section seven of the act of 1885, concerning drainage (Acts 1885, p. 129, §5628 Burns 1894), provides that the drainage commissioner shall at all times be under the control and direction of the court, and shall obey its directions, and this undoubtedly includes, since the section refers to "all times," the orders of the judge in vacation. See, also, section seven of the act of 1907 (Acts 1907, p. 508, §6147 Burns 1908); *Michigan Cent. R. Co.* v. *Northern Ind. R. Co.* (1851), 3 Ind. 239; *Pressley* v. *Lamb* (1886), 105 Ind. 171. It may further be said that both the commissioner and the contractor are agencies or arms of the court, and it is a necessary incident of the authority to construct drains that both shall be under the jurisdiction, and subject to contempt for a disobedience, of the *ad interim* orders of the court or of the judge thereof in vacation. See *Racer* v. *Wingate* (1894), 138 Ind. 114, 119. It is against the policy of the law to permit a situation to arise wherein there may be an unseemly conflict of jurisdiction between courts of equal rank in the determination of the question as to the extent or proper exercise of the authority of the court which first assumed jurisdiction over the subject-matter (*Scott* v. *Runner* [1896], 146 Ind. 12, 58 Am. St. 345), and, besides, it is inequitable that in a drainage proceeding, wherein jurisdiction may be extended over all persons by supplemental petition (§5629 Burns 1901, Acts

1885, p. 129, §8; §6148 Burns 1908, Acts 1907, p. 508, §8; *Osborn* v. *Maxinkuckee, etc., Co.* [1900], 154 Ind. 101), a landowner should be permitted to arrest the proceedings by injunction in another court, while refusing to submit himself to the jurisdiction of the court which not only has authority over the construction of the drain, but which has power to make all orders which are meet in the premises. There is no question concerning the right of any party whose lands are affected by a drainage proceeding (using the expression in the sense in which the statute uses it) to file a petition therein to be made a party during the progress of the work (*Zumbro* v. *Parnin* [1895], 141 Ind. 430; *Cambria Iron Co.* v. *Union Trust Co.* [1900], 154 Ind. 291, 48 L. R. A. 41); and, upon the filing of such petition, it is the right and duty of the court or judge to protect such landowner's interest as the circumstances may require. This brings him within the jurisdiction of the court, and, as it affords adequate means of relief, the remedy by injunction in another county is precluded.

Judgment reversed, with an order to sustain the demurrer to the first paragraph of the amended complaint.